Douglas **WOLFF, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 27A05–0907–CR–368.

Court of Appeals of Indiana.

Oct. 6, 2009.

---

Bruce N. Elliott, Marion, IN, Attorney for Appellant.

## OPINION

VAIDIK, Judge.

### Case Summary

Douglas Wolff pled guilty to criminal recklessness for firing a shotgun in the direction of his victim. Wolff' father, the victim's employer, thereafter fired the victim. Wolff was ordered to pay restitution in the amount of $12,789.00 to the victim for his lost earnings. Wolff now appeals the restitution order. Though Wolff's actions may have indirectly led to the victim's termination and consequent loss of earnings, Indiana Code § 35–50–5–3(a)(4) requires a direct causal connection. Because there is no direct and immediate link, it is simply too attenuated to hold Wolff responsible in a criminal proceeding for Wolff' father's actions in firing the victim. We therefore reverse.

### Facts and Procedural History

On December 27, 2007, the State charged Wolff with the following five counts: Class D felony criminal recklessness (involving Michael Smithhisler), Class D felony criminal recklessness (involving Merrill Wolff, Wolff' father), Class C felony intimidation, Class D felony pointing a firearm, and Class B misdemeanor disor-

derly conduct.[1] Over one year later, on January 26, 2009, Wolff and the State entered into a plea agreement, whereby Wolff pled guilty to Class D felony criminal recklessness (the count involving Smithhisler)[2] and Class B misdemeanor disorderly conduct,[3] and the State dismissed the remaining charges. The parties agreed that the sentences would be two years suspended for criminal recklessness and 180 days suspended for disorderly conduct, to be served concurrently with each other but consecutively to another cause number. Wolff also agreed to "[m]ake restitution, if any, *in the amount(s) determined to be appropriate by the Court* following a hearing at which the victim [of the criminal recklessness charge] and/or the Grant County Sheriff's Department has the opportunity to present testimony/evidence concerning the amount(s) of restitution requested . . . ." Appellant's App. p. 18.

According to the factual basis presented for criminal recklessness, on December 24, 2007, Wolff recklessly, knowingly, or intentionally fired a shotgun in the direction of Smithhisler, which created a substantial risk of bodily injury to Smithhisler.[4] And according to the factual basis presented for disorderly conduct, on December 23, 2007, Wolff recklessly, knowingly, or intentionally made an unreasonable noise, to wit: shot his high-powered rifle after dark, and continued to do so after being asked to stop.

At the sentencing hearing, the only issue was restitution.[5] Smithhisler requested counseling expenses of $921.00 and lost wages of $14,668.58. Smithhisler presented a letter, which provides, in pertinent part:

> The actions of Mr. Wolff have greatly affected my life. Since he committed this crime I have had a hard time sleeping and feeling safe. I feel that when I am out I may run in to Mr. Wolff and have this same instance occur again or possibly worse. Possibly being shot by Mr. Wolff. I am no longer able to trust people like I had in the past due to this crime Mr. Wolff has committed against me.
>
> Mr. Wolff's crime also has had a deep financial impact on my family. Mr. Wolff's father (Wolff's Insulation) was my employer. *I was terminated from my employment for pressing charges against Mr. Wolff.* I have had to basically start over financially, which has not been easy with extra medical bills I incurred due to this crime. With no job it has been very tough to survive financially.

*Id.* at 23 (emphasis added). Smithhisler then presented evidence that in 2007, he made $33,226.52 while working at Wolff's Insulation, but in 2008, he only made $15,390.00 while working at Leslie–Fisher Engineering[6] and $3,167.94 while working at Kokomo Auto World.[7] Upon further

---

1. All of the crimes besides disorderly conduct occurred on December 24, 2007. Disorderly conduct occurred on December 23, 2007.

2. Ind.Code § 35–42–2–2(b)(1), (c)(2)(A).

3. Ind.Code § 35–45–1–3(2).

4. In the fact section of his brief, Wolff includes facts but provides no citations to the record on appeal for these facts. Likewise, we cannot locate these facts in the record. Because this case involves a guilty plea, we

are constrained to using the facts from the factual basis.

5. In fact, the parties waived preparation of a Presentence Investigation Report.

6. Smithhisler testified that he "left" Leslie–Fisher Engineering after seven months "because of pressures." Tr. p. 21.

7. Smithhisler testified that he was laid off from Kokomo Auto World.

questioning by the trial court, it came out that Smithhisler neglected to include amounts he received from unemployment, which totaled $2,840.00.

In response to the allegation that Smithhisler was fired because he filed charges against Wolff, Wolff called his father, Merrill Wolff, as a witness. Merrill testified that he is the president of Wolff's Insulation Service, LLC, and that both Wolff and Smithhisler were employees of the company at the time of the incident in this case: Smithhisler had been an employee for four or five years, and Wolff had been an employee for a couple of years. Merrill testified that although he terminated Smithhisler shortly after the incident, it was not for the reason that Smithhisler alleged. Merrill explained:

> [Smithhisler] did not come into work an[d] he did not answer my phone calls he refused to call me back an[d] then two (2) or three (3) days later he came in an[d] I said what's goin' on here he said well he says in light of the circumstances, uh, I didn't think it was best for me t[o] come in an[d] he said that the . . . deputy sheriff had told him not to talk to me.

Tr. p. 26. Merrill further explained that as an employer, it is "impossible" to have an employee who does not speak with his employer, so he told Smithhisler "I don't need you any longer." *Id.*

The Sheriff's Department also submitted a request for restitution in the amount of $1,631.79 based upon the number of officers being called in and the requirement of holiday pay. Wolff told the trial court that he did not dispute paying restitution to Smithhisler for his counseling expenses or to the Sheriff's Department for holiday pay but that he did object to paying Smithhisler's lost earnings. The court accepted the plea agreement but said it would take Smithhisler's claim for lost earnings under advisement.

The trial court issued the following order on March 16, 2009:

> [T]he Court now sentences the Defendant on [criminal recklessness] to the custody of the Indiana Department of Correction[ ] for a term of imprisonment of two (2) years. The Court now suspends all of Defendant's sentence and orders Defendant to serve probation for two (2) years under the usual terms and conditions which include the following:
>
> 1. Defendant shall make restitution to the victim of [criminal recklessness], Michael Smithhisler, in the sum of $921.00 for counseling expenses and *the sum of $12,789.00 for lost wages* and to the victim, Grant County Sheriff, in the sum of $1,631.79 . . . .

> \* \* \* \* \*

> The Court now sentences the Defendant on [disorderly conduct] to the custody of the [DOC] for a term of imprisonment of one hundred eighty (180) days. The Court now suspends all of Defendant's sentence and orders Defendant to serve probation for one hundred eighty (180) days under the terms and conditions listed above for [criminal recklessness].

Appellant's App. p. 28–29 (emphasis added). Wolff now appeals the trial court's order that he pay restitution in the amount of $12,789.00 for Smithhisler's lost earnings.

### Discussion and Decision

 Wolff contends that the trial court erred by ordering him to pay restitution in the amount of $12,789.00 for Smithhisler's lost earnings. Initially, we note that the State did not file an appellee's brief. "The obligation of controverting arguments presented by the appellant properly remains with the State." *Mateyko v.*

*State*, 901 N.E.2d 554, 557 (Ind.Ct.App. 2009), *trans. denied.* Where, as here, the appellee fails to submit a brief, the appellant may prevail by making a prima facie case of error, *i.e.,* an error at first sight or appearance. *Id.* Still, we must correctly apply the law to the facts of the record to determine if reversal is required. *Id.*

■■■ A trial court has the authority to order a defendant convicted of a crime to make restitution to the victims of the crime. *Henderson v. State*, 848 N.E.2d 341, 345–46 (Ind.Ct.App.2006) (citing Ind. Code § 35–50–5–3). The purpose of a restitution order is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victims caused by the offense. *Id.* at 346. An order of restitution is a matter within the sound discretion of the trial court, and we will only reverse upon a showing of an abuse of that discretion. *Id.* An abuse of discretion occurs if the court's decision is clearly against the logic and effects of the facts and circumstances before it. *Id.*

Indiana Code § 35–50–5–3, which governs orders for restitution, provides:

(a) Except as provided in subsection (i) or (j), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:

\* \* \* \* \*

■■ (4) earnings lost by the victim (before the date of sentencing) *as a result of the crime* including earnings lost while the victim was hospitalized or participating in the investigation or trial of the crime . . . .

(Emphasis added). Pursuant to subsection (a)(4), restitution may be paid to those shown to have suffered injury, harm, or loss as a direct and immediate result of the criminal acts of the defendant. *See Huddleston v. State*, 764 N.E.2d 655, 657 (Ind. Ct.App.2002); *Vanness v. State*, 605 N.E.2d 777, 783 (Ind.Ct.App.1992), *trans. denied.*

It is true that Wolff's actions in firing his shotgun set in motion the chain of events that eventually led to the termination of Smithhisler's job. But Wolff did not terminate Smithhisler; his father, Merrill, did. The fact that Merrill terminated Smithhisler and Smithhisler thereafter had trouble keeping a job and thereby lost earnings when compared to his last year's earnings is not "a result of the crime" of criminal recklessness. That is, it is not as if Wolff shot and injured Smithhisler, which required Smithhisler to be hospitalized and miss work. Rather, crediting Smithhisler's version of events (which we must, given our standard of review), Merrill fired Smithhisler because he pursued criminal charges against his son. Though Wolff's actions may have indirectly led to Smithhisler's termination from Wolff's Insulation and consequent loss of earnings when comparing his 2007 income to his 2008 income, Indiana Code § 35–50–5–3(a)(4) requires more than that. Because there is no direct and immediate link, it is simply too attenuated to hold Wolff responsible in a criminal proceeding for his father's actions in firing Smithhisler.

Although Smithhisler's claim is inappropriate for criminal restitution, it *may* give rise to a civil claim against Merrill. *See, e.g., Lang v. State*, 911 N.E.2d 131, 136 (Ind.Ct.App.2009) ("This expenditure may give rise to a civil claim by the Conservancy District against Lang, but it is not an

appropriate claim for criminal restitution."); *Bockler v. State,* 908 N.E.2d 342, 349 (Ind.Ct.App.2009) ("Similarly, we conclude that some of the claims for reimbursement or expenses presented by the [Lawrence Fire Department] do not fit within the considerations for criminal restitution provided in Indiana Code section 35–50–5–3 .... These requests for reimbursement may be appropriate for a civil claim ..., but they are not appropriate for a criminal restitution award."); *Henderson,* 848 N.E.2d at 346 ("It is apparent—and, indeed, Henderson admits—that Allstate has a civil claim against Henderson to recover the expenses it incurred in investigating the fire. But under these circumstances, Allstate is not entitled to restitution pursuant to a criminal proceeding because the losses that it incurred do not fall into a statutorily compensable category of restitution."). Wolff has established prima facie error. We therefore reverse the trial court's award of restitution to Smithhisler in the amount of $12,789.00 for his lost earnings.

Reversed.

BAILEY, J., and BRADFORD, J., concur.