# FOR PUBLICATION



FILED
Jul 11 2013, 8:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BERNICE A. N. CORLEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHELLE BUMGARNER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KENNETH SMITH,                           )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                          )          No. 49A02-1212-CR-1017
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
Cause No. 49F18-1108-FD-61538

**July 11, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Kenneth Smith appeals the trial court's order that he pay $1,380 in restitution to William Kirkham. Smith raises a single issue for our review, which we restate as the following two issues:

1. Whether the trial court abused its discretion when it attributed property missing from Kirkham's house to Smith even though the State did not use that property to secure Smith's conviction for theft, as a Class D felony; and

2. Whether the trial court adequately considered Smith's ability to pay $230 per month in restitution when he acknowledged he was paying $240 per month for home detention fees and the court responded by suspending those fees until Smith had paid his restitution in full.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 31, 2011, the State charged Smith with theft, as a Class D felony, alleging that he had stolen a radio, guitar, DVDs, and/or a silver coin from Kirkham's house while Kirkham was away. The parties agree that the value of the unreturned stolen items listed in the charging information was about $80. After a bench trial in September of 2012, the trial court found Smith guilty as charged.

The court held a restitution hearing on December 3, 2012. At that hearing, Kirkham testified that, in addition to the items alleged in the State's charging information, he was also missing 350-400 CDs, valued between $4 and $20 each, and about $100 cash in the form of silver dollars and half dollars. Smith objected to Kirkham's testimony on the ground that those additional items had not been "proven at trial." Transcript at 4. The court overruled Kirkham's objection.

2

The State calculated Kirkham's loss at $1,380.[1]   The trial court then engaged Smith in the following colloquy:

THE COURT:        . . . the order of this Court will be restitution in the amount of $1380.00.  Now you just pay that in . . . six months in equal installments.  What is that?  $1380.00 in six months?  You can do that can't you?

MR. SMITH:        Try my hardest Your Honor.

THE COURT:        Well . . .

MR. SMITH:        I am the only one working in a household of five right now.  I am trying to support my family.

THE COURT:        I understand.

* * *

COURT REPORTER:  $230.00 a month.

MS. JOACHIM [for Smith]:   Judge I believe that may be beyond Mr. Smith's means to pay . . . .

THE COURT:        He is paying how much a month for home detention?

MR. SMITH:        . . . $240.00 a month[,] rough estimate.

THE COURT:        Okay and this is $230.00[.  P]ay this first.  Then we will talk about the other.

* * *

THE COURT:        So I assume he has the ability to pay $240.00 a month[,] is that right Mr. Smith?

MR. SMITH:        I have been paying $100.00 every two weeks.

* * *

---

[1]  The State asserts that it miscalculated in Smith's favor, but that is not relevant to this appeal.

THE COURT:    Then pay this at $[1]15.00 . . . every two weeks w[hich] will make $230.00 per month and then I will ask the judge [who] [suc]ceeds me on this bench to look at whether or not you should pay all of your home detention expenses and give you credit as he sees fit for what you have done. . . .

Id. at 12-14.  This appeal ensued.

## DISCUSSION AND DECISION

### Overview

Smith asserts that the trial court abused its discretion when it ordered him to pay $1,380 in restitution.  A trial court has the authority to order a defendant convicted of a crime to make restitution to the victim of the crime.  Ind. Code § 35-50-5-3; Wolff v. State, 914 N.E.2d 299, 303 (Ind. Ct. App. 2009).  It is well established that "restitution must reflect actual loss incurred by a victim," and that any "loss proven to be attributable to the defendant's charged crimes" is recoverable as restitution.  Batarseh v. State, 622 N.E.2d 192, 196 (Ind. Ct. App. 1993) (discussing Hipskind v. State, 519 N.E.2d 572, 574 (Ind. Ct. App. 1988)), trans. denied.

The amount of a victim's loss is a factual matter that can be determined only on presentation of evidence.  Rich v. State, 890 N.E.2d 44, 49 (Ind. Ct. App. 2008).  An order of restitution is a matter within the trial court's discretion, and we reverse only on a showing of abuse of that discretion.  Wolff, 914 N.E.2d at 303.  An abuse of discretion occurs when the order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.  Id.  Under our abuse of discretion standard, we will affirm the trial

4

court's decision if there is any evidence supporting the decision. <u>Creager v. State</u>, 737 N.E.2d 771, 779 (Ind. Ct. App. 2000), <u>trans. denied</u>.

## Issue One: Evidence of the Victim's Loss

Smith first asserts that the State may not present evidence of the victim's loss for the first time at the restitution hearing. In support of this assertion, Smith relies on <u>James v. State</u>, 868 N.E.2d 543 (Ind. Ct. App. 2007), and similar cases. In <u>James</u>, we held that the trial court abused its discretion when it ordered the defendant to pay restitution "for a second burglary . . . of which [the defendant] was never accused." <u>Id.</u> at 549.

<u>James</u> is inapposite. Unlike in <u>James</u>, here the trial court's restitution order is not based on crimes Smith was not accused of having committed. Rather, the trial court based its restitution order wholly on the acts underlying Smith's conviction. In particular, during the restitution hearing Kirkham testified that, among other things, he was missing between 350-400 CDs, valued between $4 and $20 each, and $120 in cash following Smith's theft. Thus, Kirkham's testimony demonstrated his degree of loss attributable to Smith's crime, and Kirkham may recover that loss as restitution. <u>See</u> <u>Batarseh</u>, 622 N.E.2d at 196. Insofar as Smith challenges Kirkham's testimony on appeal, Smith's argument is merely a request for this court to reweigh the evidence, which we will not do. <u>See</u> <u>Creager</u>, 737 N.E.2d at 779.

Smith does not suggest that he has a constitutional right to have the State present all evidence of the victim's loss to the trier of fact during prosecution, and for good reason. The United States Supreme Court has held that, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

5

maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely

v. Washington, 542 U.S. 296, 301 (2004) (quoting Apprendi v. New Jersey, 530 U.S.

466, 490 (2000)). More recently, the Court has applied the Apprendi-Blakely rule "to the

imposition of criminal fines," stating:

> Criminal fines . . . are penalties inflicted by the sovereign for the commission of offenses. Fines were by far the most common form of noncapital punishment in colonial America. They are frequently imposed today, especially upon organizational defendants who cannot be imprisoned. And the amount of a fine, like the maximum term of imprisonment or eligibility for the death penalty, is often calculated by reference to particular facts. Sometimes, as here, the fact is the duration of a statutory violation; under other statutes it is the amount of the defendant's gain or the victim's loss, or some other factor. In all such cases, requiring juries to find beyond a reasonable doubt facts that determine the fine's maximum amount is necessary to implement Apprendi's "animating principle": the "preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense."

Southern Union Co. v. United States, 132 S. Ct. 2344, 2350-51, 2357 (2012) (emphasis

added; footnotes and citation omitted).

But in Prickett v. State, 856 N.E.2d 1203, 1210 (Ind. 2006), the Indiana Supreme

Court held that "the trial court's order of restitution for Prickett did not violate the

requirements of Blakely" because "the scope of the Framers' conception of the Sixth

Amendment did not embrace restitution orders . . . ." (Citation and quotation omitted.)

Prickett is still good law. As explained by the United States Court of Appeals for the

Fourth Circuit:

> Day's restitution argument is unavailing . . . . [T]here is the initial question in the restitution context of whether Apprendi applies at all. Prior to Southern Union, every circuit to consider whether Apprendi applies to restitution held that it did not. Day argues that we should break ranks with

6

these prior decisions in light of <u>Southern Union</u> and apply <u>Apprendi</u> to restitution because it is "similar" to a criminal fine.

We decline to take Day's suggested course. As an initial matter, we note that <u>Southern Union</u> does not discuss restitution, let alone hold that <u>Apprendi</u> should apply to it. Instead, far from demanding a change in tack, the logic of <u>Southern Union</u> actually reinforces the correctness of the uniform rule adopted in the federal courts to date. That is, <u>Southern Union</u> makes clear that <u>Apprendi</u> requires a jury determination regarding any fact that "increases the penalty for a crime beyond the prescribed statutory maximum." 132 S.Ct. at 2350 (quoting <u>Apprendi</u>, 530 U.S. at 490, 120 S. Ct. 2348). Thus, in <u>Southern Union</u> itself, the <u>Apprendi</u> issue was triggered by the fact that the district court imposed a fine in excess of the statutory maximum that applied in that case. <u>Id.</u> at 2349.

Critically, however, <u>there is no prescribed statutory maximum</u> in the restitution context; the amount of restitution that a court may order is instead indeterminate and varies based on the amount of damage and injury caused by the offense. As a consequence, the rule of <u>Apprendi</u> is simply not implicated to begin with by a trial court's entry of restitution. . . . That logic was sound when written before <u>Southern Union</u>, and it remains so today.

<u>United States v. Day</u>, 700 F.3d 713, 732 (4th Cir. 2012) (emphasis original; some citations omitted), <u>cert. denied</u>, 133 S. Ct. 2038 (2013). We agree with the Fourth Circuit's analysis in <u>Day</u>.

Further, restricting evidence of the victim's actual loss to that which the prosecutor uses to obtain a conviction might limit the amount the victim is entitled to recover under Indiana law. <u>See</u> <u>Batarseh</u>, 622 N.E.2d at 196. For example, here, for purposes of prosecution the State focused on "what the State was able to prove from the things that were pawned . . . that there was a record of. . . . [B]ut Mr. Kirkham had other numerous things taken . . . ." Transcript at 4. Accordingly, we cannot say that the trial

7

court erred when it permitted the State to present, at the restitution hearing, evidence of the victim's actual loss that was not presented during Smith's trial.

### Issue Two: Ability to Pay

Smith next asserts that the trial court failed to inquire into his ability to pay restitution. When restitution is ordered as a condition of probation, "the court shall fix the amount, which may not exceed an amount the person can or will be able to pay." I.C. § 35-28-2-2.3(a)(5). Although the trial court must determine the defendant's ability to pay the amount of restitution ordered, the statute does not specify the extent to which the court must inquire to determine the defendant's financial status. Smith v. State, 655 N.E.2d 133, 134 (Ind. Ct. App. 1995), trans. denied; see also Kays v. State, 963 N.E.2d 507, 509 (Ind. 2012) ("The statute sets forth no particular procedure the trial court must follow in determining the defendant's ability to pay, but we have consistently recognized that some form of inquiry is required."). Thus, we review this issue for an abuse of discretion. See Smith, 655 N.E.2d at 134.

The trial court inquired into Smith's ability to pay. Specifically, the court asked Smith if he could pay $1,380 over six months, to which Smith said he would "[t]ry [his] hardest." Transcript at 12. The court then clarified that Smith's obligation would be $230 per month for six months, and Smith estimated that he was already paying $240 per month for his home detention. The court then stated, "So I assume he has the ability to pay $240.00 a month, is that right Mr. Smith?" Id. at 14. Smith did not dispute the court's statement, and the court suspended Smith's payments for home detention so that

8

Smith could first pay restitution to Kirkham instead.  Accordingly, the trial court did not abuse its discretion when it determined Smith's ability to pay restitution.

Affirmed.

BAILEY, J., and BARNES, J., concur.