**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 16 2014, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**PHILIP H. CHAMBERLAIN**
Clear Creek, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHILIP H. CHAMBERLAIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1305-CR-247 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Teresa D. Harper, Judge
Cause No. 53C09-0805-FC-480

**April 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Indiana attorney Philip H. Chamberlain was originally charged with five Class C felonies stemming from his involvement in the development of a southern Indiana golf course. Chamberlain eventually pleaded guilty to Class D felony counterfeiting and was ordered to pay $15,000 in restitution to the victim. Chamberlain now appeals, arguing that the trial court erred by including a $5000 loan in the $15,000 restitution amount because his counterfeiting conviction did not cover the incident involving the loan. Because a restitution order cannot be based on an incident for which a defendant is not convicted and we cannot determine from the record in this case what Chamberlain's counterfeiting conviction covers, we remand this case to the trial court to determine the amount of restitution, if any, the victim is entitled to for Chamberlain's counterfeiting conviction only.

**Facts and Procedural History**

Shannon Ramey and his girlfriend Helen Fields have owned Dorothy Apartment Rentals since 2006. Ramey has known Chamberlain, a Bloomington attorney, since 1981.[1] In 2007, Chamberlain talked to Ramey about investing money on behalf of Dorothy Apartment Rentals in JRock Ridge, a golf course in Orleans, Indiana, owned by Dwight Hart. Chamberlain was the golf course's consultant. Chamberlain told Ramey that the golf course needed money so that it could develop lots for residential construction. Ramey was interested and said that Dorothy Apartment Rentals would loan money to the golf course.

---

[1] As a result of his felony conviction in this case, Chamberlain received an interim suspension from the practice of law until final resolution of any resulting disciplinary action. *See In re Philip H. Chamberlain*, Cause No. 53S00-1303-DI-191 (Ind. June 11, 2013).

Ramey made out several checks on behalf of Dorothy Apartment Rentals to JRock Capital Investment LLC.[2] Ramey gave these checks to Chamberlain. For example, Ramey wrote a $35,000 check to JRock Capital Investment LLC in late January/early February 2007. However, without Ramey's permission or knowledge, Chamberlain kept $15,000 of the check for himself.[3] Then, on April 1, 2007, Ramey wrote another check to JRock Capital Investment LLC in the amount of $36,750. Chamberlain, not Hart, endorsed this check in the name of "JRock Capital Investment" and signed his own name underneath as "director" even though Chamberlain was not the director. State's Ex. 1. Hart did not give Chamberlain the authority to endorse checks. The next day, Chamberlain, again without authority, split the $36,750 check into two cashier checks: one for $26,750 and the other for $10,000. Chamberlain gave Hart the $26,750 check. Hart believed this check was from Ramey on behalf of Dorothy Apartment Rentals and deposited it; Hart did not know the check was $10,000 less than the original check. As for the $10,000 check, Chamberlain endorsed it using the name "JRock Capital" and then wrote "Pay to Order: Hillcrest Shoppes Inc." underneath. State's Ex. 3. Chamberlain, who had an ownership interest in Hillcrest Shoppes, then deposited the $10,000 check into his Hillcrest Shoppes bank account.

When Chamberlain gave Hart the $26,750 check, he claimed that Hart owed Dorothy Apartment Rentals a $1750 "fee." So Hart wrote a $1750 check to Dorothy Apartment Rentals and gave it to Chamberlain. Chamberlain, however, cashed the check

---

[2] Hart was the general or managing member of JRock Capital Investment LLC.

[3] There is a dispute whether Ramey's check was for $40,000 and whether Chamberlain kept $20,000 for himself. Tr. p. 80.

for himself; he did not give it to Dorothy Apartment Rentals or Ramey. Chamberlain also told Hart that he was not getting any money for doing all this work and asked Hart for a $5000 loan that he would pay back the following week. Hart gave Chamberlain $5000 that he never repaid.

At some point, Ramey suspected something was wrong and hired another attorney to investigate. In July 2007, this attorney wrote Hart a letter stating that his payments to Dorothy Apartment Rentals were past due. Hart was confused because he thought Ramey was purchasing lots on the golf course, not making a loan to him. Tr. p. 67. Ramey made a report to the Bloomington Police Department in November 2007. Although Hart eventually filed bankruptcy, he managed to pay back Dorothy Apartment Rentals in full.

In May 2008, the State charged Chamberlain with five Class C felonies: Counts I and II fraudulent sale of securities; Count III forgery; Count IV sale of unregistered securities; and Count V transacting business as an unregistered broker-dealer or agent. Appellant's App. p. 33-35. After more than four years of delays and continuances, the State and Chamberlain reached a plea agreement in October 2012. Chamberlain pleaded guilty to counterfeiting, which was Amended Count I. *Id.* at 36. Amended Count I alleged that between September 2006 and May 2007, Chamberlain knowingly or intentionally made or uttered a written instrument in such a manner that it purported to have been made by authority of one who did not give authority. *Id.* at 37; Ind. Code § 35-43-5-2(a)(1)(D). Pursuant to the plea agreement, the trial court had discretion to enter judgment as a Class D felony or Class A misdemeanor. Appellant's App. p. 37. In addition, "[t]he length of

4

the sentence and the amount of time suspended [wa]s within the discretion of the court. . . . The amount of restitution, if any, shall be determined by the Court after a hearing." *Id.*

A sentencing and restitution hearing was held over the course of two days in January and February 2013. Chamberlain represented himself. On the first day of the hearing, Hart testified that as a result of his dealings with Chamberlain, he had to pay $124,000 but was still short $44,103. Tr. p. 71. Hart did not fully explain how he arrived at these figures. On the second day of the hearing, the State stipulated that it would not seek more than $16,750 in restitution from Chamberlain. *Id.* at 190. Chamberlain testified that he repaid Hart $25,500 in February 2008 before any criminal charges were filed against him so that Hart could pay back Ramey. *Id.* at 79, 246. Hart did not dispute that he received the $25,500 payment from Chamberlain. *Id.* at 79.

The trial court entered judgment as a Class D felony[4] and sentenced Chamberlain to 540 days suspended to probation and 120 hours of community service. The court also ordered Chamberlain to pay $15,000 in restitution to Hart. Although both parties agree on appeal that the trial court did not explain how its restitution amount was calculated, during closing argument the State requested that Chamberlain repay Hart as follows:

$10,000 (from the $36,750 check)

$5000 (for the unpaid loan)

$1750 (for the "fee" that was supposed to go to Dorothy Apartment Rentals)

$16,750

---

[4] The trial court explained that upon Chamberlain's successful completion of probation, which is set to conclude on August 19, 2014, Chamberlain's Class D felony can be reduced to a Class A misdemeanor. Tr. p. 287.

*Id.* at 275. When the trial court ordered Chamberlain to pay Hart $15,000 in restitution, the prosecutor clarified with the court that it was not $16,750. *Id.* at 287. The court said that it was in fact $15,000. *Id.* Based on the State's request during closing, it appears that the $15,000 restitution amount comprises $10,000 from the $36,750 check and $5000 from the unpaid loan (but not the $1750 "fee").

Chamberlain filed a motion to correct errors, which the trial court denied. *See* Appellant's App. p. 93-100.

Chamberlain, pro se, now appeals the $15,000 restitution order.[5]

## Discussion and Decision

Chamberlain contends that the trial court erred in ordering him to pay Hart $15,000 in restitution. He raises several arguments, but we find one dispositive: Hart's $5000 loan to Chamberlain should not have been included in the $15,000 restitution amount because Chamberlain's counterfeiting conviction did not cover that incident.

The principal purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused. *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008), *reh'g denied*. Restitution also serves to compensate the victim of the crime. *Id.*

---

[5] The State cross-appeals, arguing that Chamberlain's appeal should be dismissed because we are "without jurisdiction to entertain the appeal." Appellee's Br. p. 12. The State claims that Chamberlain did not file his motion to correct errors within thirty days of the trial court's sentencing order. The trial court sentenced Chamberlain on February 27, 2013; Chamberlain then filed his motion to correct error on April 1, 2013. The State says that Chamberlain should have filed his motion to correct errors on March 29, 2013. Friday, March 29, 2013, however, was a state holiday. The next business day was April 1, 2013. Accordingly, Chamberlain timely filed his motion to correct error.

A trial court has the authority to order a defendant convicted of a crime to make restitution to the victim of the crime. *Smith v. State*, 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied.* The amount of a victim's loss is a factual matter that can be determined only on presentation of evidence. *Id.* An order of restitution is a matter within the trial court's discretion, and we reverse only on a showing of an abuse of that discretion. *Id.* An abuse of discretion occurs when the order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* Under our abuse-of-discretion standard, we will affirm the trial court's decision if there is any evidence supporting the decision. *Id.*

Indiana Code section 35-50-5-3, which governs restitution, provides in pertinent part:

> (a) Except as provided in subsection (i), (j), (l), or (m), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased. The court shall base its restitution order upon a consideration of:
> > (1) property damages of the victim incurred *as a result of the crime*, based on the actual cost of repair (or replacement if repair is inappropriate) . . . .

(Emphasis added). Importantly, restitution may be paid to a victim for damages "incurred *as a result of the crime*[.]" Ind. Code § 35-50-5-3(a)(1) (emphasis added). This means that a restitution order cannot be based on an incident for which a defendant is not convicted. *See Gil v. State*, 988 N.E.2d 1231, 1236 n.5 (Ind. Ct. App. 2013) (holding that a $20,000 restitution order could not be based on an incident for which defendant was not convicted; defendant pleaded guilty to one count in exchange for the State dismissing the

7

other count upon which the restitution order was based); *James v. State*, 868 N.E.2d 543, 549 (Ind. Ct. App. 2007) ("James argues that the trial court abused its discretion in ordering him to pay restitution for a burglary to which he did not plead guilty. . . . The State agrees."); *Polen v. State*, 578 N.E.2d 755, 757 (Ind. Ct. App. 1991) (holding that the trial court's restitution order for crimes to which the defendant did not plead guilty, was not convicted, and did not agree to pay restitution was contrary to law), *trans. denied*. Because Hart's $5000 loan to Chamberlain was not covered by Chamberlain's counterfeiting conviction, it should not have been included in the $15,000 restitution amount. *See* Appellant's App. 37 (Amended Count I alleging that between September 2006 and May 2007, Chamberlain knowingly or intentionally made or uttered a written instrument in such a manner that it purported to have been made by authority of one who did not give authority).

Nevertheless, a defendant can agree to pay more restitution than the amounts involved in the counts to which he pleads guilty. *See Kinkead v. State*, 791 N.E.2d 243, 245-46 (Ind. Ct. App. 2003), *trans. denied*. But that is not what happened here. Chamberlain has argued all along that he does not owe any restitution to Hart because the $25,500 he paid to Hart in February 2008 covered any restitution he might owe him. The State responds that even though Chamberlain paid Hart $25,500 in 2008, Chamberlain still owes Hart money. Hart testified at the sentencing and restitution hearing that he was still short $44,103. Tr. p. 71. But because we do not have the transcript from Chamberlain's guilty-plea hearing, we cannot consult the factual basis for his counterfeiting conviction to see what written instrument it covered. Without this information, we cannot determine the

8

amount of restitution, if any, Hart is entitled to after taking into account that Chamberlain has already paid Hart $25,500. We must therefore remand this case to the trial court for it to determine the amount of restitution, if any, Hart is entitled to for the counterfeiting conviction only, taking into consideration Chamberlain's $25,500 payment to Hart.[6]

Reversed and remanded.

NAJAM, J., and BROWN, J., concur.

---

[6] In light of this resolution, we do not need to address Chamberlain's argument that the trial court "erroneously entered a restitution order without making the necessary findings . . . to enable the parties to later determine how the restitution dollar amount had been calculated." Appellant's Br. p. 6. On remand, if Chamberlain wants findings, he should make a written request for findings pursuant to Indiana Trial Rule 52(A).

As for Chamberlain's argument that the trial court erred in ordering him to pay restitution to Hart personally instead of to Hart's company, JRock Capital Investment, this issue may become moot on remand. But if it does not become moot, this issue should be resolved below given the minimal amount of evidence in the record concerning Hart's company.