## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 02 2016, 9:09 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Cynthia Bell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 2, 2016

Court of Appeals Case No.
49A02-1504-CR-234

Appeal from the Marion Superior Court

The Honorable Amy Jones

The Honorable Tom Hirschauer, Judge Pro Tempore

Trial Court Cause No.
49G08-1408-CM-39656

**Vaidik, Chief Judge.**

# Case Summary

Cynthia Bell was ordered to pay $932.30 in restitution as a condition of her probation after she was convicted of Class B misdemeanor criminal mischief for vandalizing two cars. The trial court heard testimony on Bell's financial circumstances, including that she receives $730 per month from Social Security and that this sum is enough to pay her necessities and some personal expenses. The trial court ordered that the restitution be paid in $20-per-week installments to be consistent with Bell's limited income. We conclude, therefore, that it was not an abuse of discretion for the trial court to determine that Bell will be able to pay for the damage she caused and to order restitution as a condition of probation.

# Facts and Procedural History

At 4:30 a.m. on August 4, 2014, Cynthia Bell was banging on the front door of Kalencia Kirkland's home and shouting to be let into the house. When Kirkland looked out the window, she saw Bell vandalizing her rental car, a Chevy Malibu. Kirkland called the police, but Bell slashed one of the Malibu's tires and left before officers arrived. Shortly after the officers left Kirkland's house, Bell returned and threw a brick at the house, breaking the bedroom window. Once again, Kirkland called the police. Indianapolis Metropolitan Police Department Officer Martin Koeller arrived at Kirkland's house shortly after 6:00 a.m., saw the broken window, but did not find Bell. After Officer Koeller left, Bell returned to Kirkland's house a third time. Bell slashed a tire,

broke a mirror, and did other body damage to Kirkland's personal car, a Kia Sportage.

[3] The State charged Bell with Class B misdemeanor criminal mischief. She was convicted at a bench trial and sentenced to 180 days, 178 days suspended to probation and given credit for two days as time served. In addition, Bell was ordered to pay restitution as a condition of her probation and a restitution hearing was scheduled.

[4] During the restitution hearing, Kirkland presented an estimate to fix the Kia, which totaled $912.30, and a receipt for $20 to plug the slashed tires. Kirkland also presented estimates for replacing the broken bedroom window and for replacing the tires on the Malibu. However, the charging information did not include the bedroom window and Kirkland did not replace the tires on the Malibu—she paid a fee to Enterprise, the rental company, and lost the receipt for that fee. Bell testified that she receives $730 per month in Social Security Disability income. From this income, Bell pays her rent, utilities, expenses for her dog, and her personal expenses. The trial court found that $932.30 in restitution was due to Kirkland and that Bell had the ability to pay that amount based on her testimony that she has enough money to pay her own living expenses. The court determined that restitution could be paid at a rate of $20 per week over the course of a year. Bell appeals the order of restitution.

# Discussion and Decision

[5] Bell argues that the trial court abused its discretion by ordering her to pay $932.30 in restitution because the amount is in excess of what she can or will be able to pay. When restitution is ordered as a condition of probation, "the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." Ind. Code § 35-38-2-2.3(a)(6). Although the trial court must determine the defendant's ability to pay the amount of restitution ordered, the statute does not specify the extent to which the court must inquire into the defendant's financial status. *Smith v. State*, 990 N.E.2d 517, 522 (Ind. Ct. App. 2013), *trans. denied*. Therefore, a restitution order is a matter within the trial court's discretion, and we reverse only on a showing of abuse of that discretion. *Id.* at 520. An abuse of discretion occurs when the order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[6] Bell presented her own testimony regarding her financial circumstances which included the facts that she has $730 per month in income, and that this income is sufficient to pay for her rent, utilities, a dog and her personal expenses. The trial court concluded that Bell had money for things beyond the barest necessities and, therefore, she could afford a small payment toward the total cost of restitution each month. *See* Tr. p. 30. Based on the record before us, we cannot say that ordering Bell to pay $20 per week is "clearly against the logic

and effect of the facts and circumstances before the court[.]" *See Smith*, 990 N.E.2d at 520.

[7] We conclude, therefore, that the trial court did not abuse its discretion when it ordered Bell to pay restitution as a condition of her probation.

[8] Affirmed.

Bailey, J., concurs.

Crone, J., dissents with separate opinion.

| | |
|---|---|
| Cynthia Bell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>49A02-1504-CR-234<br><br>Appeal from the Marion County<br>Superior Court<br><br>The Honorable Amy M. Jones,<br>Judge<br><br>The Honorable Tom Hirschauer,<br>Judge Pro Tempore<br><br>Trial Court Cause No.<br>49G08-1408-CM-39656 |

**Crone, Judge, dissenting.**

[9]     I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion when it ordered Bell to pay $932.30 ($20 per week) in restitution as a condition of probation.  As noted by the majority, before entering a restitution order, the trial court "must determine the defendant's ability to pay the amount of restitution ordered" and the amount ordered "may not exceed an amount the person can or will be able to pay." Slip op. at 2. Understandably, the trial court has discretion in the matter; however, such discretion is not without limits.

[10]    The entirety of the testimony related to Bell's ability to pay was as follows:

> MR. DOANE:      Miss Bell are you currently working?
> DEFENDANT:     No.

| | |
|---|---|
| THE COURT: | Ma'am you're probably going to have to talk up. I talk real loud. |
| DEFENDANT: | I have a cold. I didn't want to- |
| THE COURT: | I appreciate that. I just got to be able to hear you and record you. |
| DEFENDANT: | Yeah…no I'm not working. |
| MR. DOANE: | And when was the last time you[] worked? |
| DEFENDANT: | Over twenty years. |
| MR. DOANE: | So how are you supporting yourself? |
| DEFENDANT: | I get disability…SSI |
| MR. DOANE: | And when do you get those checks? |
| DEFENDANT: | On the 1st. |
| MR. DOANE: | The first of the month? |
| DEFENDANT: | Yes. |
| MR. DOANE: | And how much are those checks for? |
| DEFENDANT: | $730.00. |
| MR. DOANE: | And what do you use that $730.00 to pay for? |
| DEFENDANT: | I pay my rent. I pay my light bill. I pay my phone bill. I pay for my dog's expense, my expense and eating expense and I'm done. |
| MR. DOANE: | Now after you pay all those things how much money is left over? |
| DEFENDANT: | I have none. |
| MR. DOANE: | Are you using food pantries for food right now? |
| DEFENDANT: | Yes I am. |
| MR. DOANE: | And how much money do you have in the bank? |
| DEFENDANT: | I don't have anything in the bank. |
| MR. DOANE: | Do you have money anywhere else? |
| DEFENDANT: | No. |
| MR. DOANE: | Would it be safe to say you're living paycheck to paycheck right now? |
| DEFENDANT: | Yes I am. |
| MR. DOANE: | And you don't anticipate your financial situation changing in the future? |
| DEFENDANT: | I have no idea. I don't know (inaudible). I |

|              |                                         |
|--------------|-----------------------------------------|
|              | don't know.  So far it hasn't.          |
| MR. DOANE:   | And you don't have any…you don't have a car? |
| DEFENDANT:   | No.                                     |
| MR. DOANE:   | You don't have any assets?              |
| DEFENDANT:   | No.                                     |
| MR. DOANE:   | And any sort of money you'd have to pay would be a real financial hardship for you? |
| DEFENDANT:   | Yeah very much.                         |
| MR. DOANE:   | No further questions, Judge.            |
| THE COURT:   | State cross.                            |
| [THE STATE]: | I have no questions.                    |

Tr. at 76-77.  Based upon this, and only this, evidence as to Bell's ability to pay,

the trial court found:

> THE COURT:     I'm aware of the statute as well as the case law.  I'm not finding her indigent as to this.  I do believe that although she has a limited income, when you break it you buy it and I believe she broke it and when you break it you buy it and I recognize that that's going to make life hard for a while but that's life.  You've been found indigent.  You've gotten…you've received free legal counsel,  I'll tell you he's done a very good job for you.  I can tell you that my firm to represent you in a matter like this probably would've run you about five grand.  You go beyond that and think about the fact that you know, you're also getting appellate costs for free.  I do believe that your indigency status…I believe that you are capable of making this restitution over time.  You have time through probation and although there are other things that and other services that you have received that might disagree with that, my rule as to the…I will make a record.  You make $730.00 a month.  You have not worked for the last twenty years but you talked about in your monthly expenses your own spending money and other spending money.  I couldn't tell if it was a pet or if it was a family member and I apologize for that but you've been talking softly so there is…you

have money that you spend on things other than lights and your house and at this point you broke her car and I think that you're going to have to live a little bit thinner…I am aware that there is case law as well as statutory authority that says if she's truly indigent, restitution cannot be appropriately awarded by the Court. I am not finding her indigent as it relates to restitution.

*Id.* at 82-83.

[11]     Based upon this record, I fail to see any evidence before the trial court that could support a conclusion that Bell, an indigent defendant, has the ability to pay $20 per week in restitution. The State had an opportunity to develop the evidence regarding her actual expenses yet specifically declined to do so. Similarly, the trial court made no inquiry. The trial court's comments regarding Bell's indigency are inconsistent at best and suggest that Bell had already received enough benefit from her indigency and should therefore be liable for restitution regardless of her ability to pay. While I am not unsympathetic to the victim's economic losses, in my view, the trial court's order is clearly against the logic and effect of the facts and circumstances before the court.[1] Therefore, I would reverse the trial court's restitution order.

---

[1] The victim in this case is left with the option to pursue civil processes to seek redress for her losses.