## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2018, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert B. Coffey,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

October 22, 2018

Court of Appeals Case No.
18A-CR-479

Appeal from the Floyd Superior Court

The Honorable Susan L. Orth, Judge

Trial Court Cause No.
22D01-1509-FD-1749

**Brown, Judge**.

[1] Robert B. Coffey appeals from the trial court's restitution order. We affirm.

## Facts and Procedural History

[2] Coffey was the Paymaster of The Southeast Marine Corps League (the "League"), a military veterans league. On September 18, 2015, the State charged him with theft as a class D felony and theft as a level 6 felony. In October 2017, the State and Coffey entered into a plea agreement pursuant to which he agreed to plead guilty to two counts as amended of criminal conversion as class A misdemeanors. The parties agreed he would receive a sentence of 365 days suspended on each count to be served concurrently and that the League had a right to a restitution hearing. Coffey pled guilty pursuant to the plea agreement, and the court accepted the plea and sentenced him consistent with the plea agreement.

[3] On January 25, 2018, the court held a restitution hearing. Jason Fessell, a Senior Vice Commandant of the League, testified that Coffey told the League that Harley Davidson would donate a motorcycle to the League for a raffle. He indicated the League's goal was to raise $30,000 by selling 300 raffle tickets for $100 each. Fessell testified that he and members of the League, other than Coffey, sold 175 of the tickets and that Coffey claimed to have sold 125 tickets. He testified that Coffey, as the Paymaster, controlled the funds coming into and out of the League and its checking account and that the League opened a separate account for the raffle event. Fessell testified that Coffey was not present for most of the day on the day of the raffle drawing, the League

proceeded with the drawing and a winner was drawn, and at that time Coffey showed up and said that he had locked the keys in the warehouse where the motorcycle was located and did not have access to it. Fessell indicated that several members of the League drove to the warehouse, looked through the windows, and discovered that basically the warehouse was empty. Fessell indicated that Coffey, at the sheriff's office, admitted that there was no motorcycle.

[4] Fessell testified that the League knew that $17,500 should have been in its account because it had sold 175 tickets and that, when Coffey turned over the account, it contained about $550. Fessell also indicated that Coffey produced a motorcycle for the raffle winner and that he assumed that Coffey used the $17,500 that had been raised to purchase the motorcycle.[1] Fessell testified that Coffey took the League's ability or opportunity to raise another $12,500 based on the 125 tickets he claimed to have sold and that the League was seeking that amount. Fessell also indicated that, when the members sold tickets, they gave the money to Coffey to place into the League's account.

[5] Michael Maloney, the Commandant of the League at the time of the raffle, testified that approximately 160 raffle tickets were sold. He indicated that he and other League members met with a detective and that, when the detective

---

[1] The State presented a document reflecting a purchase of a Harley Davidson vehicle for a total of $17,721.50 including sales tax and fees, and the name identified as the buyer on the document is the name of the person who Fessell testified was the raffle winner.

asked what the League wanted to do, he told the detective that Coffey needed to make the League whole on the motorcycle. He testified that he knew the League had sold $16,000 worth of tickets, that there were expenses for the shirts, trophies, and food, and that he believed the League was owed twelve or thirteen thousand dollars.

[6] Coffey testified that he thought 155 to 160 raffle tickets had been sold, that he intended to obtain a donated motorcycle from Harley Davidson but that fell through, and that he was embarrassed and panicked. He testified that he and his wife took money from their retirement accounts to pay for the motorcycle, and that he was asked to purchase, and did purchase, the motorcycle.

[7] In closing, the prosecutor stated the League was requesting restitution in the amount of $12,500. Coffey's counsel argued that Coffey purchased the motorcycle and did everything he was requested to do. He also stated he did not know why the League was coming back for unsold tickets and argued that whether the League would have sold those tickets was speculative.

[8] The trial court indicated it would order restitution in the amount of $12,500 and stated in part:

> I believe there's an argument for you to be responsible for [$16,000]. . . . I still don't accept that [160] tickets were sold and that money just doesn't, is gone. I just, I have a hard time understanding that there's [$16,000] of T-shirts, registrations and trophies that have gone in and out when it's an organization that never had large sums of money to begin with. . . . I think that [$16,000] could have gone to support veterans and instead had to

be used, um, for I'm not sure. I still don't know if that was partly used to purchased [sic] the bike that should have been a donated bike. I don't, I don't know where the money is. But bottom line, it was your responsibility. [S]o I'm ordering that [$12,500] be paid toward the League.

Transcript at 132-133.

## *Discussion*

[9] Coffey argues that the League requested restitution based on the amount it could have raised had Coffey given it the opportunity to sell the 125 tickets which he claimed to have sold, that there is no evidence the League would have sold his 125 raffle tickets, and accordingly that any conclusion the League suffered losses of $12,500 is pure speculation. The State responds that, while the trial court awarded restitution in the amount of $12,500 as the League requested, it did not do so based upon any speculation regarding the value of the 125 raffle tickets Coffey purported to have sold and that, instead, the court properly found that the evidence showed that Coffey exercised unauthorized control over the money collected for the raffle tickets that had been actually sold by his fellow League members in an amount at least equaling $16,000. In reply, Coffey argues that, at the restitution hearing, the State presented the testimony of a representative from the League who stated the position of the League that restitution be requested for the value of the unsold raffle tickets.

[10] A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a class A misdemeanor. Ind. Code § 35-43-4-3.

[11] The primary purpose of restitution is to vindicate the rights of society and to impress upon the defendant the magnitude of the loss the crime has caused. *Gonzalez v. State*, 3 N.E.3d 27, 29 (Ind. Ct. App. 2014). Restitution also serves to compensate the offender's victim. *Id*. An order of restitution is generally within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. *Id*. at 30.

[12] Indiana law authorizes the trial court to order restitution for damages incurred as a result of the crime. *See* Ind. Code § 35-50-5-3. Any loss proven to be attributable to the defendant's charged crimes is recoverable as restitution. *Smith v. State*, 990 N.E.2d 517, 520 (Ind. Ct. App. 2013), *trans. denied*. Under our abuse of discretion standard, we will affirm the trial court's decision if there is any evidence supporting the decision. *Id*. We will not reweigh the evidence. *Id*.

[13] The record shows that evidence was presented that 160 raffle tickets were sold for a total of $16,000 and that the proceeds of those ticket sales were given to Coffey but not turned over to the League. Fessell testified that 175 tickets were sold for a total of $17,500 and that the League was "out that money." Transcript at 27. He indicated that, when the League members sold the raffle tickets, they gave the money to Coffey to place in the League's account. Coffey

indicated that he thought 155 to 160 raffle tickets had been sold. Maloney indicated that approximately 160 tickets were sold and that he thought that the League was owed, after accounting for expenses, twelve or thirteen thousand dollars. We will not reweigh the evidence and will affirm if there is any evidence supporting the restitution order. *See Smith*, 990 N.E.2d at 520.

[14] Based upon the record, and in light of the raffle tickets actually sold, we cannot say that the trial court abused its discretion in ordering Coffey to pay restitution in the amount of $12,500.

[15] For the foregoing reasons, we affirm the trial court's order.

[16] Affirmed.

Altice, J., and Tavitas, J., concur.