## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Mary P. Lake
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard A. Cope,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

January 31, 2018

Court of Appeals Case No.
46A05-1707-CR-1674

Appeal from the LaPorte Superior Court

The Honorable Greta S. Friedman, Judge

Trial Court Cause Nos.
46D04-1601-F6-10
46D04-1601-F6-21

**Brown, Judge.**

[1] Richard A. Cope appeals an order of restitution and his sentence for intimidation as a level 6 felony, torturing or mutilating a vertebrate animal as a level 6 felony, and animal neglect/abandonment as a class A misdemeanor. Cope raises two issues which we revise and restate as:

  I. Whether the trial court erred in ordering him to pay restitution; and

  II. Whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

We affirm.

### Facts and Procedural History

[2] On December 14, 2015, Cope called his ex-wife Kristine Rice and stated: "I will kill you all." Appellant's Appendix Volume II at 15.[1] Rice promptly hung up the phone. Cope also called Rice that day and left a message in which he stated:

> Most of the snitches that I know don't live very long. You're going to get yours. If you ever snitch on me to the cops again, you're going to wake up and you're [sic] life will be very different. That shit you pulled last night calling the cops on me cost me $1500 and you're going to see the consequences of that.

*Id.* On December 16, 2015, Michigan City Police Detective Al Bush received a phone call from Rice regarding another threatening phone call message from

---

[1] Cope cites police reports in his statement of facts. *See* Appellant's Brief at 7.

Cope in which he threatened to kill them. On December 22, 2015, Detective Bush met with Rice about the phone calls and saw that her phone had over ninety calls and texts from Cope. That same day, Detective Bush talked to Cope, told him he needed to stop calling Rice and her boyfriend, and noticed that Cope's "white puppy was sitting on the couch and there was nothing wrong with it." *Id.* at 17.

[3] On December 25, 2015, a "white pit bull puppy" was discovered in a yard in close proximity to where Cope resided with electrical tape around its mouth and suffering from two broken hips by people who then took the dog to an emergency veterinarian. *Id.* at 49. The veterinarian center called Sherri Christopher, the executive director and founder of Guardians of the Green Mile ("Guardians"), a non-profit dog rescue, because the center needed someone to take financial responsibility for the dog, and the Guardians agreed to take on that responsibility. During questioning by police, Cope stated that he placed the tape on the dog's mouth to keep it shut because he did not want the dog to bite him any longer and that he threw the dog once in the garage and kicked the dog once.

[4] In January 2016, the State charged Cope with intimidation as a level 6 felony under cause number 46D04-1601-F6-10 ("Cause No. 10"). The State also charged Cope under cause number 46D01-1601-F6-21 ("Cause No. 21") with Count I, torturing or mutilating a vertebrate animal as a level 6 felony; Count II, cruelty to an animal as a class A misdemeanor; Count III, animal

neglect/abandonment as a class A misdemeanor; and Count IV, animal neglect/abandonment as a class A misdemeanor.

[5] On February 10, 2017, Cope and the State filed a plea agreement in which he agreed to plead guilty to intimidation as a level 6 felony under Cause No. 10, and Count I, torturing or mutilating a vertebrate animal as a level 6 felony, and Count IV, animal neglect/abandonment as a class A misdemeanor, under Cause No. 21. The agreement provided that the parties agreed to cap any initially ordered executed time at forty-eight months, and that Cope "shall pay restitution to the appropriate individual/entity equal to the amount of the animal's surgery bills" and "shall pay restitution to Laporte County for the cost of extraditing him to Indiana." *Id.* at 218. That same day, the court held a hearing.[2]

[6] On March 10, 2017, the court held a consolidated sentencing hearing. Christopher testified that when the dog was found, he was roughly five months old, he had his muzzle taped with electrical tape, his airway was cut off so he was foaming at the mouth, he was dragging his back end, he could not walk, and he was emaciated. She stated that "[t]hey had to remove the tape and – carefully because the tissue had become so necrotic that it literally went through his muzzle all the way to his gum that's how rotten the tissue was" and that "everybody was pretty much afraid his muzzle was going to fall off because it

---

[2] The record does not contain a transcript of this hearing.

was that bad." Transcript Volume I at 4. She also testified that the dog had a severe infection in his mouth, had two broken legs by his hips, and his femur was snapped off from the hip socket. According to Christopher, the dog underwent surgery immediately for his muzzle and then his hips, and received water therapy, therapy with his foster home, and laser therapy. When asked if she was given any long-term prognosis for the dog, she testified that the dog would suffer from arthritis "at a much sooner rate" and would have range of motion issues "because the hips were broke literally at the socket and into the femur so – and he doesn't have muscle mass in his back end to compensate for those broken hips." *Id.* at 5.

[7] The defense presented the testimony of Sara Molebash, a field officer employed by LaPorte County Community Correction. She testified that she supervised Cope since November and that he was on home detention, worked five to seven days a week, had not committed conduct violations since she supervised him, and had passed every drug test. She testified that Cope was not current on his fees because he did not find employment as soon as he was placed on the program.

[8] LaPorte County Sheriff's Deputy James Fish testified that he came into contact with Cope on January 17, 2017, and Cope reached out and assisted with the apprehension of a suspect wanted for escape. Kimberly Jean Novak, Cope's supervisor at NDP News, testified that Cope's employment with her started a month earlier and that he exceeded her expectations.

[9] Rice testified that she was married to Cope from 2009 until 2012 and that they had a child who was seven years old. She stated that Cope left an intimidating message on her answering machine in December 2015, but she was no longer terrified of him, he apologized numerous times for the message, he was a great father, and he contributed financially. On cross-examination, Rice testified that she contacted the police on December 14, 2015, because of the threatening voicemail she received from Cope, that she told the police at that time that she was terrified for herself and her children, and that she informed the police that she believed or knew that Cope had seven to eight marijuana plants in the basement.

[10] Cope's counsel mentioned that Cope had agreed to pay restitution as part of his plea agreement and asked Cope how he was going to pay for the restitution. Cope answered that with the newspaper job "there's some opportunity for growth and opportunity for additional earnings to be made that stability of a full-time job like that is what I was lacking so I think that combined with my tattooing income leaves me feeling very comfortable about being able to satisfy these obligations." *Id.* at 26. He testified that he wanted to maintain a stable relationship with his son and have an impact on his life. He testified that he contacted law enforcement regarding a woman who had warrants for her arrest. He also stated that he provided information after his return from Texas towards building a case against the two individuals who helped him leave Indiana. When asked if he had anything to say to the "supporters of the dogs and the Guardians," he stated in part: "I think I'd like to apologize for each and every

person that's came here as my actions are not indicative of the character of me as a person or the manner in which my parents raised me." *Id.* at 33.

[11] The prosecutor asked the court to sentence Cope to five years with four years executed followed by one year of probation. The prosecutor also stated: "And I also have the restitution order that I drafted, in this – I don't think defense has ab [sic] objection to, it indicates restitution will be paid to Guardians of the Green Mile in the amount of $3895.00, and the La Porte County Sheriff's Office $1163.20." *Id.* at 40-41. Cope's counsel stated: "Without objection, Judge." *Id.* at 41. In his closing argument, Cope's counsel stated in part:

> As the Court is well aware restitution is part of this plea, and it's not insignificant amount it's several thousands of dollars. We feel that In-home detention is going to be the right place to serve this because it allows him to, you know, not only support child, support his family, but also begin to make restitution as he's agreed to pay.

*Id.* at 43. He also argued that the fact that Cope would be making restitution was a statutory mitigator. Cope's counsel requested a sentence as follows: "60 months, 12 suspended served on probation, reporting general probation, 48 months executed, credit for time served, the balance of that executed through La Porte Corrections GPS." *Id.* at 45. The court took the matter under advisement.

[12] On April 21, 2017, the court held a hearing. It found Cope's lengthy criminal history, the fact he had previously violated probation, that he had care, custody, and control of the injured dog, and the fact he fled the jurisdiction while the

case was pending and had to be extradited as aggravators. It found the following mitigators: Cope's guilty plea; his agreement to make restitution to the Guardians for the cost of treatment for the dog's injuries and to the Sheriff's Department for the cost of extraditing him from Texas; his post-traumatic stress disorder; and his remorse. The court found that the aggravators outweighed the mitigators and stated that Cope's request "to serve his entire sentence on house arrest because his son needs him rings hollow in consideration that he threatened the child's mother." Transcript Volume II at 5. The court also observed that Cope returned to Indiana only when the LaPorte County Sheriff delegated officers to go down to Texas and bring him back. It further observed that "[h]e left this son behind then most obviously not putting his son's welfare upper most in his thoughts, so to now indicate that his son needs him when he apparently did not need him while he left the state, does not carry much w[e]ight." *Id.* at 6. The court stated that Cope's "tip to the police which played a role in apprehending a fugitive in January is commendable, but it does not excuse his previous poor decision making in the Court's eyes." *Id.* With respect to the treatment of the dog, the court stated:

> The injury and disregard for the animal was significant. He was not only left outside in winter weather for hours his hips were broken, in addition to that his mouth was taped shut so that even if he could manage to get to shelter or food or water, he would not be able to eat or drink.

*Id.* at 7.

[13] The court sentenced Cope to consecutive sentences of twenty-four months for intimidation as a level 6 felony under Cause No. 10, twelve months for torturing or mutilating a vertebrate animal as a level 6 felony under Cause No. 21, and twelve months for cruelty to an animal as a class A misdemeanor under Cause No. 21. Cope was ordered to pay restitution in the amount of $3,895 to the "appropriate individual/entity equal to the amount of the animal's surgery bills (Guardian of the Green Mile)" and $1,163.20 to the LaPorte County Sheriff's Department for the cost of extradition to Indiana. Appellant's Appendix Volume III at 7. The court ordered that "[s]aid restitution shall be entered as a civil judgment." *Id.*

## *Discussion*

### I.

[14] The first issue is whether the trial court erred in ordering Cope to pay restitution. Cope argues that, despite the plea agreement's language, the State did not prove that LaPorte County or the Guardians were victims for purposes of Ind. Code § 35-31.5-2-348 and that the court committed fundamental error in awarding restitution to them. He contends that, although he agreed in his plea to pay restitution, Guardians was not proven to be the appropriate individual/entity to receive the restitution award.

[15] The State argues that Cope cannot challenge the legality of this sentencing term on appeal because he received the benefit of his bargain and waived any argument that the restitution orders were improper because he agreed to pay

those entities for those specific costs as an explicit term of the plea agreement. The State also asserts that Cope waived any claim by failing to object to the amount of restitution put forward at the sentencing hearing.

[16] "An order of restitution is generally within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion." *Gonzalez v. State*, 3 N.E.3d 27, 30 (Ind. Ct. App. 2014) (citing *Edsall v. State*, 983 N.E.2d 200 (Ind. Ct. App. 2013), *reh'g denied*). A trial court abuses its discretion when "the court's decision is clearly against the logic and effects of the facts and circumstances before it." *Wolff v. State*, 914 N.E.2d 299, 303 (Ind. Ct. App. 2009).

[17] Generally, "[d]efendants who plead guilty to achieve favorable outcomes give up a plethora of substantive claims and procedural rights, such as challenges to convictions that would otherwise constitute double jeopardy." *Lee v. State*, 816 N.E.2d 35, 40 (Ind. 2004) (quoting *Davis v. State*, 771 N.E.2d 647, 649 n.4 (Ind. 2002) (citation and quotation omitted)). If the court accepts a plea agreement, it shall be bound by its terms. *Berry v. State*, 10 N.E.3d 1243, 1246 (Ind. 2014).

[18] As noted, the plea agreement provided that Cope "shall pay restitution to the appropriate individual/entity equal to the amount of the animal's surgery bills" and "shall pay restitution to La[P]orte County for the cost of extraditing him to Indiana." Appellant's Confidential Appendix Volume II at 218. Cope does not challenge the amount of restitution. At the sentencing hearing, the prosecutor stated that he drafted an order that Cope pay restitution of $3,895 to the

Guardians and $1,163.20 to the LaPorte County Sheriff's Office, and Cope's counsel stated that he did not object. To the extent Cope argues that the Guardians was not proven to be the appropriate individual/entity to receive the restitution award, we note he asserts in his statement of facts that the veterinarian center contacted the executive director of the Guardians about someone taking financial responsibility for the dog's care and that Dr. Maggie Sharpe told a Michigan City Police Detective that the Guardians had agreed to take care of the dog and pay its medical expenses.

[19] The plea agreement provided that Cope would plead guilty to only two of the four counts under Cause No. 21, and the other two counts under Cause No. 21 were dismissed. The plea agreement also stated that the parties agreed to cap any initially ordered executed time at forty-eight months. In his closing argument, Cope's counsel argued that the fact that Cope would be making restitution was a statutory mitigator, and the trial court found Cope's guilty plea and agreement to make restitution to the Guardians and LaPorte County Sheriff's Department to be mitigators. Under the circumstances, we cannot say that the trial court abused its discretion in ordering that Cope pay restitution.

## II.

[20] The next issue is whether Cope's sentence is inappropriate in light of the nature of the offenses and his character. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the

nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[21] Cope argues that he and his wife were in the process of splitting up at the time he made the threats, he did not make any threats to her in person, he confessed to the charges, he suffers from post-traumatic stress disorder, he expressed remorse, and his Indiana Risk Assessment System score shows only a moderate risk to reoffend. He requests that we reduce his sentence or change the commitment to electronic monitoring. The State argues that Cope's actions were deplorable and deserving of his sentence.

[22] Our review of the nature of the offenses reveals that Cope called Rice and threatened to kill her. Cope also tortured or mutilated his dog and abandoned or neglected the animal by depriving it of food and water by taping its mouth shut. When the dog was found, it had electrical tape around its mouth and had suffered two broken hips.

[23] Our review of the character of the offender reveals that Cope was convicted of or sentenced for criminal conversion in 1985; forgery in 1988; theft and possession of a controlled substance as class D felonies in 1989; battery as a class B misdemeanor, battery against a person less than thirteen years of age resulting in bodily injury as a class D felony, and insurance fraud as a class D felony in 1992; bank robbery in 1999; public intoxication as a class B misdemeanor in 2008; false report of a felony in 2012; operating a vehicle while

intoxicated as a class A misdemeanor and "Controlled Substance-Delivery/Manufacture Marijuana" as a felony in 2012; and driving without an operator's license on person as a misdemeanor in 2015. Appellant's Appendix Volume II at 191. The presentence investigation report ("PSI") states that Cope had been placed on probation six known times and released unsatisfactorily three known times. The PSI indicates that Cope reported being very sorry for calling his ex-wife and ashamed of his actions in Cause No. 10 and that he admitted he hurt his dog and was very disturbed when he committed the offenses related to his dog.

[24] The PSI reveals that Cope reported that he graduated from high school in 1984, and attended Ivy Tech Community College from 2010 to 2013 and Purdue North Central from 2014 to 2015. It indicates that he reported working at an inn and a restaurant and had been self-employed as a tattoo artist. The PSI states that Cope reported his financial situation and his physical and mental health as fair. Cope reported that his physical and mental health were fair, and that he was diagnosed with Attention Deficit Hyperactivity Disorder when he was eleven or twelve years old, bipolar disorder when he was thirteen years old, and post-traumatic stress disorder after being sexually abused in federal prison. He reported that he smoked marijuana weekly and last smoked it in 2015, and that he completed a substance abuse program successfully after being ordered to participate in 2007. The PSI states that Cope's overall risk assessment score using the Indiana Risk Assessment System places him in the moderate risk to reoffend category.

After due consideration, we conclude that Cope has not sustained his burden of establishing that his sentence is inappropriate in light of the nature of the offenses and his character.

## *Conclusion*

For the foregoing reasons, we affirm Cope's sentence.

Affirmed.

Baker, J., and Riley, J., concur.