**Justin JAMES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 03A01–0607–CR–276.**

Court of Appeals of Indiana.

June 21, 2007.

544

Stacy R. Uliana, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Justin James appeals his twenty-eight-year sentence, with fourteen years executed, which he received after pleading guilty to two Class C felonies and four Class D felonies. James was sixteen years old at the time of the offenses. He presents four issues on appeal, two of which we address: [1]

1. James also raised the issue of whether the trial court properly applied aggravating and

I. Whether James' sentence is appropriate in light of the nature of the offenses and his character.

II. Whether the trial court properly imposed restitution.

We reverse and remand with instructions.[2]

## FACTS AND PROCEDURAL HISTORY

Between December 15, 1998 and May 16, 1999, James was involved in various criminal acts. First, James, along with other teenagers, broke into a doctor's office. They stole cash, checks, and equipment, while causing significant damage to the office. Then, on February 18, 1999, James stole a purse from a car. He gave his sister the stolen credit cards from the purse to purchase merchandise, and he used the money to purchase marijuana. Three months later, James, again with other teenagers, broke into Machinery Moving's place of business. They stole approximately $515.00 in cash and caused extensive damage to the business.

James was waived to adult court and placed on house arrest while he awaited trial. On one occasion, while James was drinking with others at his house, community corrections arrived. To avoid being caught, James cut off his ankle bracelet and fled. James spent the next two weeks hiding from authorities, but he eventually was caught and placed in the Department of Correction.

The State charged James in four separate causes, specifically: 1) under CF–404, he was charged with theft[3] as a Class D felony, criminal mischief[4] as a Class A misdemeanor, receiving stolen property[5] as a Class D felony, forgery[6] as a Class C felony, two counts of fraud,[7] each as a Class D felony, and auto theft[8] as a Class D felony; 2) under DF–613, he was charged with escape[9] as a Class D felony; 3) under CF–661, he was charged with burglary[10] as a Class C felony; and 4) under CF–477, he was charged with two counts of burglary each as a Class C felony.

James pled guilty to two Class C felonies and four Class D felonies—two counts of burglary, one count of escape, one count of theft, and two counts of fraud. The trial court accepted the plea. During the sentencing hearing, the trial court listed several aggravating factors, including: 1) violation of probation and parole; 2) an extensive criminal and delinquent history; 3) the need for correctional and rehabilita-

---

mitigating circumstances. Additionally, James raised the issue of whether the trial court adhered to Indiana's episode of criminal conduct sentencing restriction when it imposed consecutive sentences. Because we exercise our right to review and revise his sentence under Indiana Appellate Rule 7(B), we need not address these issues.

**2.** We held oral argument on this matter on April 13, 2007 at Speedway High School. We extend our thanks to Principal Ray Lawrence and History Teacher Andre Young, who requested to have this argument before their students, and to all attending "Sparkplugs" for their cooperation and participation. We additionally commend counsel on the quality of their oral and written advocacy.

**3.** *See* IC 35–43–4–2.

**4.** *See* IC 35–43–1–2.

**5.** *See* n. 3 above.

**6.** *See* IC 35–43–5–2.

**7.** *See* IC 35–43–5–4.

**8.** *See* IC 35–43–4–2.5.

**9.** *See* IC 35–44–3–5(b).

**10.** *See* IC 35–43–2–1. The charging information under CF–661 incorrectly lists IC 35–43–3–2.

tive treatment best provided by commitment to a penal facility; and 4) the imposition of a reduced or suspended sentence would depreciate the seriousness of the offenses. *Tr.* at 91–92. The trial court stated James' age was a mitigating circumstance. *Id.* at 92.

The trial court sentenced James to the maximum sentence available on all counts with fourteen years suspended to probation and the remaining fourteen years executed in the Department of Correction. James moved to modify his sentence in 2000. The trial court granted James' motion in part, by reducing the executed portion of his sentence under CF–477 from eight years to six years with two years suspended, and under CF–661 from eight years executed to four years with four years suspended. Then in 2003, James moved again to modify his sentence. The trial court denied this motion. On October 29, 2003, the trial court found that James had served the executed portion of his sentences under DF–613, CF–404, and CF–477, but not under CF–661.

Sometime thereafter, James was released to probation.[11] Over a three-month period, James violated his probation by testing positive for marijuana four times, going to unapproved locations, and falsifying his employment four times. For his violations, the trial court placed James in custody until community corrections was prepared to release him to its work release programs. Five months later, James violated his probation by resisting law enforcement. The trial court ordered James to serve sixteen years of his suspended sentences under CF–404, CF–661, and DF–613 less credit time under CF–404, and, ordered him to pay $2,225.52 to the doctor's insurance company and $500.00 to the doctor in restitution under CF–477. Thereafter, the trial court granted James' Belated Notice of Appeal pursuant to Indiana Post–Conviction Rule 2.

## DISCUSSION

### I. Indiana Appellate Rule 7(B) Review

■ The Indiana Constitution provides courts of appeal, in all criminal cases, "... the power to ... review and revise the sentence imposed." *Childress v. State,* 848 N.E.2d 1073, 1079 (Ind.2006) (quoting Ind. Const. art. VII, § 4). Indiana Appellate Rule 7(B) prescribes this power and states that this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Indeed even where the trial court has been meticulous in following the proper procedure in imposing a sentence," this court may still revise any sentence we find inappropriate.[12] *Childress,* 848 N.E.2d at 1079–80. "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Id.* at 1080.

---

**11.** The Chronological Case Summary for all causes does not detail when James was released from the Department of Correction. *See Appellant's App.* at 5, 138, 276, and 378.

**12.** If a plea agreement leaves any discretion to the trial court, i.e., capped sentence or sentencing range, a defendant may still raise an Indiana Appellate Rule 7(B) appropriateness claim. *See Rivera v. State,* 851 N.E.2d 299, 302 (Ind.2006) (even though plea agreement specified ten-year sentence, trial court was still permitted to determine "how said sentence should be served"; thus, defendant did not waive issue for appeal). However, courts of appeal may not revise a plea agreement's specified and accepted exact sentencing term based on the nature of the offense and the character of the offender. *See Hole v. State,* 851 N.E.2d 302, 304 (Ind.2006).

James contends that, based on his character and the nature of the offenses, his sentence is inappropriate. James highlights several factors pertaining to his character and his offenses, specifically: 1) he was sixteen years old when he committed the crimes; 2) none of his offenses were violent; 3) his crimes were borne out of drugs, alcohol, youth, and stupidity; 4) his immaturity will lessen with time; 5) he took responsibility by pleading guilty; 6) he suffers from mental illness and substance abuse; 7) both of his parents suffer from alcoholism; and 8) his criminal history consists of six non-violent juvenile adjudications. These facts, James argues, do not warrant the trial court's order of consecutive maximum sentences. He suggests that an appropriate sentence would be the presumptive [13] sentence for each felony, with all offenses running concurrently to one burglary offense.

James states that an offender's "very youthful age" may abrogate a maximum sentence because the maximum sentence should be reserved for the very worst offender. *Brown v. State*, 720 N.E.2d 1157, 1159 (Ind.1999); *Brown v. State*, 760 N.E.2d 243, 245 (Ind.Ct.App.2002).[14] As support for this contention, James cites to *Roper v. Simmons*, 543 U.S. 551, 569–70,

125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), where the United States Supreme Court stated that "juvenile offenders cannot with reliability be classified among the worst offenders" and any conclusion otherwise is "suspect." The Court acknowledged three differences between juvenile and adult offenders that justify this classification, namely, juveniles are more prone to reckless behavior, they are more susceptible to outside influence, like peer pressure, and their character is not as well-formed. *Roper*, 543 U.S. at 569–70, 125 S.Ct. 1183. Without any Indiana caselaw characterizing a juvenile non-violent offender as the worst of the worst, James claims his sentence must be inappropriate.[15] *Cf. Hill v. State*, 499 N.E.2d 1103 (Ind.1986) (fifty-year sentence for eighteen-year-old defendant convicted of his first felony, burglary, was manifestly unreasonable and sentence reduced to thirty years); *Pagan v. State*, 809 N.E.2d 915 (Ind.Ct.App.2004) (twenty-year sentence for robbery was inappropriate based on defendant's youth and non-violent criminal history).

James contends that his character is reflected in his guilty plea. Particularly, he claims, that he accepted responsibility and that the lack of any pretrial motions or

13. "Presumptive" sentences were removed from Indiana Statutory Law on April 25, 2005. *See* IC 35–50–2–1.3. However, James was sentenced while "presumptive" or "fixed term" sentencing was still in effect. *Smylie*, 823 N.E.2d 679, 683 (Ind.2005) ("For *Blakely* purposes, Indiana's 'fixed term' is the functional equivalent of Washington's 'standard sentencing range.' "). Our Supreme Court stated a presumptive sentencing term is fixed unless the trial court finds either aggravators or mitigators. *Id.* Because James was sentenced in 1999, we refer to the presumptive sentence.

14. *Brown v. State*, 720 N.E.2d 1157, 1159 (Ind.1999) cites *Carter v. State*, 711 N.E.2d 835, 843 (Ind.1999), which stated that defendant's age of fourteen, plus the surrounding

circumstances, was "sufficiently mitigating that the maximum sentence is manifestly unreasonable." However, the *Carter* Court also stated that, the defendant's age of fourteen was a much more powerful factor than a defendant "who is sixteen or seventeen." *Carter*, 711 N.E.2d at 842.

15. We are unable to locate any cases where a non-violent juvenile offender received the maximum sentence after being charged as an adult. *But cf. N.D.F. v. State*, 775 N.E.2d 1085 (Ind.2005) (in juvenile adjudication involving attempted robbery, trial court imposed maximum allowable juvenile penalty and, pursuant to statute, was permitted to transfer juvenile to Department of Correction).

continuances delaying or challenging the charges against him is further evidence of his acceptance. *See Francis v. State*, 817 N.E.2d 235, 238 (Ind.2004) (guilty plea and remorse at an early stage in the proceeding, suggests mitigating weight "in the high range"); *see also Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995) (seventy-year sentence for felony murder and conspiracy to commit robbery was unreasonable due to defendant's age (seventeen) and his guilty plea).

Further, James argues that his mental illness and substance abuse have compromised his behavior. James was diagnosed with major depressive disorder, oppositional disorder, borderline personality feature, and visual spatial learning disability. James suggests that his childhood fostered some of these illnesses. James' parents are both alcoholics, and his father has a history of substance abuse. Prior to his diagnosis, James attended various outpatient counseling sessions. Since a very young age, James has abused alcohol, marijuana, LSD, and other substances. *See Jordan v. State*, 787 N.E.2d 993, 997 (Ind. Ct.App.2003) (given "[defendant]'s youth; his extensive drug habit; the non-violent nature of his prior and present offense; and [defendant]'s request for drug treatment in lieu of retribution, the maximum sentence imposed by the trial court was inappropriate"). James contends that his request for treatment, like in *Jordan*, should weigh favorably in our consideration of his character. *Tr.* at 63–65.

■ The State emphasizes, when looking at the trial court's decision, "review under Appellate Rule 7(B) is extremely deferential to the trial court." *Pennington v. State*, 821 N.E.2d 899, 903 (Ind.Ct.App. 2005). "A reviewing court must refrain from merely substituting its opinion for that of the trial court." *Appellee's Br.* at 8 (citing *Sallee v. State*, 777 N.E.2d 1204, 1216 (Ind.Ct.App.2002)).[16]

The State contends that James' sentence is appropriate based on the nature of the offenses and his character. Specifically, this court should not focus on comparing cases but, instead, should focus on what the nature and depravity of the instant offenses reveal about James' character. Initially, the State counters James' use of *Roper*, by stating that *Roper* does not pronounce the difference between juveniles and adults in all crimes, but only in juvenile death penalty cases. Here, there is no capital offense. Thus, the State contends that this court should focus on the specific circumstances that show a troubled character engaging in "gratuitously destr[uctive]" and "calculated" conduct, which deserves the maximum sentence. *Id.* at 9.

According to the State, James destroyed property of a business while committing burglary, stole a purse from a car, solicited his sister as an accomplice to fraud, and committed various acts of theft. These, the State contends, are not signs of immaturity but are calculated acts of criminal activity. *Id.*

Next, the State focuses on James' character through his juvenile adjudications. At age nine, James was adjudicated a delinquent for vandalism. Over the next four years, James was adjudicated a delinquent for theft, truancy, runaway, burglary, theft, glue sniffing, battery, theft, forgery, escape, and possession of marijuana. These offenses reveal James' complete disregard for others or their property. Further, James has failed to respond positive-

16. We note that the State does not challenge James' right to raise an Indiana Appellate Rule 7(B) *appropriateness* claim, rather than the former Indiana Appellate Rule 7(B) (2001) *manifestly unreasonable* claim.

ly to house arrest or treatment programs. He cut his house arrest bracelet off twice, the second time he did it while drinking and only five or six days after being released from custody. The State argues that James' character is among the worst of the worst juvenile offenders. This plus the nature of the offenses justifies his sentence.

■ Based on a review of the trial court's decision, we agree with James that maximum-consecutive sentences totaling twenty-eight years for a non-violent sixteen-year-old are inappropriate. In doing so, we note the importance of deferring to the trial court's sentencing discretion. James' character is troubling. His criminal history begins two weeks after his ninth birthday. In this case, James committed several offenses that injured the property of various individuals and businesses. Thus far, attempts at James' rehabilitation have been unsuccessful.

However, James pled guilty and expressed remorse for his behavior. James also suffered from a tough childhood that exposed him to harsh circumstances and left him diagnosed with several psychological issues and an addiction to drugs and alcohol. Most significantly, James was sixteen years old when he committed these offenses and the offenses were non-violent. We agree with James that based on these offenses and his character prior to his sentence the trial court's sentence was inappropriate. The trial court shall revise James' sentences to the presumptive with all sentences concurrent to each other.

## II. Restitution

■ Restitution orders are within the discretion of the trial court. *Shane v. State,* 769 N.E.2d 1195, 1199 (Ind.Ct.App. 2002). This court will affirm the trial court's decision if there is evidence to support it. *Id.* IC 35–50–5–3(a)(1) gives the trial court the authority to order restitu-

tion for property damage incurred as the result of a burglary. "The amount of actual loss is a factual matter which can be determined only upon the presentation of evidence." *Id.* (citing *Kellett v. State,* 716 N.E.2d 975, 980 (Ind.Ct.App.1999)). "Absent an agreement by the defendant, a trial court may not order restitution in an amount greater than the sums involved in those crimes to which the defendant actually pleaded guilty." *Kinkead v. State,* 791 N.E.2d 243, 245 (Ind.Ct.App.2002).

■ James argues that the trial court abused its discretion in ordering him to pay restitution for a burglary to which he did not plead guilty. Specifically, James claims the restitution ordered by the trial court, in the amount of $500.00 to the doctor and $2,225.52 to the doctor's insurance company for the office damage, exceeded the damages incurred from the burglary for which he pled guilty. The State agrees. Here, the doctor paid a $250.00 deductible and the insurance company paid the doctor $621.68 for a second burglary that occurred in February of 1999, of which James was never accused. We remand and instruct the trial court to reduce the restitution order accordingly, reflecting a $250.00 balance due to the doctor and a $1,603.84 balance due to the insurance company.

Reversed and remanded with instructions.

SULLIVAN, J., concurs.

ROBB, J., concurs in part and dissents in part with separate opinion.

ROBB, Judge, concurring in part and dissenting in part.

I concur in the majority's resolution of the restitution issue; however, I respectfully dissent from the majority's Appellate Rule 7(B) analysis.

I acknowledge James' difficult childhood, psychological diagnoses, and his plea of guilty and expression of remorse. For those reasons, I concur with the majority that maximum and consecutive sentences totaling twenty-eight years are inappropriate. I further concur with the majority that concurrent sentences for his crimes would be appropriate. However, I believe James' character as reflected by his criminal history warrants some enhancement of his sentence. The majority's description of James' character as "troubling" is, in my estimation, an understatement. His criminal history began when he was nine years old. From that time until he was sentenced in these cases, his family placed him in numerous treatment programs, from nearly all of which he was discharged unsuccessfully. Court-ordered rehabilitative treatment has also been unsuccessful. He has been using alcohol and drugs regularly since he was thirteen or fourteen years old. Two weeks after his release to home detention during the pendency of these charges, James was again consuming alcohol, and in an effort not to be caught, cut off his home detention ankle bracelet and fled. While in jail, he was written up for consuming sleeping pills.

With regard to these offenses, James committed two burglaries and a theft in five months, followed by escaping from home detention. He broke into two businesses and not only stole property from those businesses but also vandalized them. He stole a woman's purse from her car and immediately used the cash he found in the purse to buy marijuana. Then, in conjunction with his sister, he used the credit cards he found in the purse to buy over $1,000 in merchandise.

The majority notes "the importance of deferring to the trial court's sentencing discretion." Op. at ——; *see Losch v. State,* 834 N.E.2d 1012, 1014 (Ind.2005).

However, it does not appear that the majority decision reflects any deference to the trial court. Our supreme court has held that the fact of multiple crimes constitutes a valid aggravating circumstance that a trial court may consider in imposing consecutive or enhanced sentences. *Truax v. State,* 856 N.E.2d 116, 126 (Ind. Ct.App.2006) (citing *O'Connell v. State,* 742 N.E.2d 943, 952 (Ind.2001)). Here, James may be young and his offenses may have been non-violent, but he nonetheless committed a number of serious offenses in a short period of time, extending an already-lengthy criminal history. He did not choose to benefit from the conditional release granted to him while these charges were pending, choosing instead to violate the terms of his release by drinking and then escaping from home detention in an attempt to avoid the consequences of that behavior. Like the majority, I am troubled by the waiver into adult court of a child who committed only nonviolent offenses, but Appellate Rule 7(B) review is not the avenue to rectify such a situation. Under these circumstances, I believe enhanced sentences were an appropriate exercise of the trial court's discretion. At the very least, I would affirm the enhanced sentences imposed by the trial court for each of James' burglary convictions, while agreeing with the majority that the sentences should be served concurrently.