## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 15 2020, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jose J. Reyes,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

April 15, 2020

Court of Appeals Case No.
19A-CR-2541

Appeal from the Allen Superior Court

The Honorable Samuel R. Keirns, Magistrate

Trial Court Cause No.
02D06-1904-F6-499

**Tavitas, Judge.**

## Case Summary

Jose J. Reyes appeals his convictions and sentence for battery on a public safety official, a Level 6 felony, and resisting law enforcement, a Class A misdemeanor. We affirm.

## Issues

Reyes raises two issues on appeal, which we restate as follows:

  I.    Whether the jury returned inconsistent verdicts; and

  II.   Whether Reyes' sentence is inappropriate in light of the
        nature of his offense and his character.

## Facts

Ava Maria Hospitality House ("AMHH") is located in Fort Wayne. AMHH is operated by St. Mary's Catholic Church, which also operates a soup kitchen across the street from AMHH. AMHH provides food as well as telephone, computer, laundry, and shower amenities to homeless persons. Reyes was homeless for the three-year period preceding the instant events. Reyes "frequently" used AMHH's facilities, which include a single shower stall. Tr. Vol. II p. 22.

On April 22, 2019, Reyes entered AMHH, intending to use the shower stall. Volunteer Vickie Schneider was on duty at the time. Reyes was agitated upon arrival and wanted to shower immediately; he became even more agitated on learning that the shower was occupied. Reyes added his name to AMHH's

shower signup sheet and, when the shower became available, Reyes entered to use it. Reyes immediately began to shout that the water was too cold.

[5] The disturbance was brought to Schneider's attention. Schneider approached the shower area and advised Reyes, who was still in the shower, that the water temperature was beyond AMHH's control. Schneider stated that Reyes should exit the shower if the water was too cold. Reyes "became belligerent and started hollering and calling [Schneider] names[.]" *Id*. at 23. Schneider instructed a volunteer to notify Detective Larry Tague of the Fort Wayne Police Department, who worked a private security detail at the soup kitchen.

[6] Reyes exited the shower stall, shouted that he would "kill everybody in the house[,]" and stated that he was not afraid of the police and "would kill" any police officer that responded to AMHH. *Id*. Schneider exited the shower area. Reyes followed Schneider, screamed obscenities at her, and shouted that he would kill her. The confrontation spilled outside to the porch of AMHH.

[7] Detective Tague heard Reyes shouting well before Detective Tague reached the street. Detective Tague observed Reyes standing on the porch of AMHH and screaming obscenities at Schneider and other volunteers. Detective Tague approached and spoke to Schneider. Over Reyes' shouting, Schneider stated that she wanted Reyes to leave AMHH's premises. "Three to five" times, Detective Tague ordered Reyes to stop shouting; however, Reyes refused and told Detective Tague "that he wasn't afraid of Detective Tague and that [ ] he would go after [ ] and kill [Detective Tague]." *Id*. at 24, 34.

[8]     Detective Tague stepped closer to Reyes and administered a "last warning." *Id.* at 34. Reyes "clenched his fists[ ] and yelled 'f*** you' at [Detective Tague] and took a combat stance." *Id.* Detective Tague told Reyes: "[F]ine, you're under arrest, turn around and put your hands behind your back[.]" *Id.* Reyes refused. Detective Tague "moved in to take [Reyes] into custody to make the arrest." *Id.* at 35. As Detective Tague attempted to secure and handcuff Reyes' right wrist, Reyes "jerked away" his right arm, grabbed Detective Tague's shirt collar, and "drew back to hit [Detective Tague]." *Id.* at 38.

[9]     Detective Tague and Reyes "swung at about the same time" and exchanged blows. *Id.* During the altercation, Reyes punched the left side of Detective Tague's head while still maintaining his grip on Detective Tague's shirt. Reyes continued to "swing[ ] at" Detective Tague, whose police radio and handcuffs fell to the ground during the struggle. *Id.* at 24. A bystander returned the police radio to Detective Tague, who called for backup. In the meantime, Detective Tague extricated himself from Reyes' grip, drew his service weapon, and held Reyes at gunpoint until backup assistance arrived.

[10]    On April 25, 2019, the State charged Reyes with battery on a public safety official, a Level 6 felony; resisting law enforcement and criminal trespass, Class A misdemeanors; and disorderly conduct, a Class B misdemeanor. The trial court conducted a jury trial on September 4, 2019. The jury found Reyes guilty of the battery and resisting law enforcement counts, and not guilty of the criminal trespass and disorderly conduct counts.

The trial court conducted Reyes' sentencing hearing on October 1, 2019. In remarks to the trial court, Reyes stated: "I never hurt the police officer, never, ever"; "I never touched the police officer. I never sa[id] such mean words and terrible actions"; and that, "[in] thirty[-]five years in the United States[,] I never ha[d] a problem with the police[.]" Sent. Tr. pp. 6, 7. In imposing its sentence, the trial court identified Reyes' prior criminal history and failed prior attempts at rehabilitation as aggravating factors and found no mitigating factors. The trial court imposed the following concurrent sentences: for battery, one and one-half years in the Department of Correction ("DOC"); and for resisting law enforcement, one year in the DOC.[1] Reyes now appeals.

## Analysis

### I.  *Inconsistent Jury Verdicts*

Reyes argues that the jury's verdicts were inconsistent and irreconcilable. *See* Reyes' Br. p. 9 ("The convictions of battery and resisting law enforcement are logically and rationally inconsistent with the acquittal on disorderly conduct."). This claim is not available for appellate review. *See State v. O.E.W.,* 133 N.E.3d 144, 158 (Ind. Ct. App. 2019) (quoting *Beattie v. State*, 924 N.E.2d 643, 649 (Ind. 2010) ("Jury verdicts in criminal cases are not subject to appellate review on grounds that they are inconsistent, contradictory, or irreconcilable.")).

---

[1] Since May 24, 2019, Reyes has been subject to a hold for the United States Citizenship and Immigration Services. *See* Sent. Tr. p. 5 (advising the trial court "that there is an ICE hold on [Reyes], so as soon as this case is completed, [Reyes] will be going to Chicago").

## II.    *Inappropriateness of Sentence*

Reyes argues that his sentence is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Wilson v. State,* 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; the trial court's judgment receives "considerable deference." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders*, 71 N.E.3d at 844 (citing *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 6 felony is six months to two and one-half years, with an advisory sentence of one year. *See* Ind. Code § 35-50-2-7. Here, the trial court imposed a one and one-half year sentence on Reyes' conviction for battery on a public

safety official, a Level 6 felony. The sentencing range for a Class A misdemeanor is a fixed term of not more than one year. I.C. § 35-50-3-2. Here, the trial court imposed a maximum, one-year sentence on Reyes' conviction for resisting law enforcement, a Class A misdemeanor. Although Reyes faced a maximum aggregate sentence of three and one-half years, the trial court imposed concurrent sentences, resulting in an aggregate one and one-half-year sentence.

[16] Our analysis of the "nature of the offense" requires us to look at the extent and depravity of the offense rather than comparing the instant facts to other cases. *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002). The nature of the instant offenses is as follows: At his jury trial, Reyes testified that he availed himself of AMHH's hospitality and resources approximately twenty times in the year preceding the incident. *See* Jury Tr. p. 84. After Reyes shouted obscenities, made threats, and refused to leave AMHH, Reyes refused Detective Tague's repeated orders to stop shouting and to leave. When Detective Tague attempted to handcuff Reyes, Reyes jerked his arm away, grabbed Detective Tague's shirt collar, and struck Detective Tague's head.

[17] Regarding Reyes' character, our assessment of the character of an offender requires us to consider the defendant's background, criminal history, age, and remorse. *See James v.* State, 868 N.E.2d 543, 548-49 (Ind. Ct. App. 2007). "The significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State,* 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013) (citing

*Rutherford v. State,* 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State,* 13 N.E.3d 440, 448 (Ind. Ct. App. 2014).

[18] Reyes' adult[2] criminal history consists of convictions for leaving the scene of an accident (2004) and disorderly conduct (2005), Class B misdemeanors; and driving while suspended, Class A misdemeanors (2012, twice). Reyes had a previously-suspended sentence revoked and had a sentence modified. His prior convictions have resulted in executed jail time, probation, and home detention; however, his encounters with the justice system have not deterred him from criminal activity. Also, Reyes has never been issued an Indiana driver's license, but has been convicted twice of driving without a license. These facts do not reflect well on Reyes' character.

[19] Reyes' conduct at AMHH and attack on Detective Tague also reflect poorly on his character, given Reyes' testimony that he availed himself of AMHH's hospitality and resources approximately twenty times in the year preceding the incident and Reyes' testimony that he knows better than to hit a police officer. *See* Jury Tr. p. 87 (Reyes' testimony that "my father told me to don't [sic] hit an officer"). We cannot say that Reyes' sentence is inappropriate in light of the nature of his offenses and his character.

---

[2] Reyes has no known juvenile criminal history.

# Conclusion

[20] Reyes' claim of inconsistent jury verdicts is not available for appellate review. Reyes' sentence is not inappropriate in light of the nature of his offense and his character.  We affirm.

[21] Affirmed.

Riley, J., and Mathias, J., concur.