## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 16 2020, 9:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jared R. Mains,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 16, 2020

Court of Appeals Case No. 20A-CR-144

Appeal from the Ripley Circuit Court

The Honorable Jeffrey Sharp, Special Judge

Trial Court Cause No. 69C01-1803-F5-13

**Tavitas, Judge.**

## Case Summary

[1] Jared Mains appeals his sentence, entered pursuant to his guilty plea, for battery on a pregnant woman, a Level 5 felony; possession of methamphetamine, a

Level 6 felony; failure to appear, a Level 6 felony; and for being a habitual offender. We affirm.

## Issue

The sole issue is whether Mains' sentence is inappropriate in light of the nature of his offenses and his character.

## Facts

On March 6, 2018, Indiana State Police Trooper Nicholas Albrecht and Versailles Town Marshal Joe Mann were dispatched to the scene of a domestic disturbance in Ripley County. When Trooper Albrecht and Marshal Mann arrived, they saw Mains exit the house. Trooper Albrecht approached Mains and asked Mains why the police were summoned. Mains denied that there was any domestic disturbance. Trooper Albrecht instructed Mains to stand in a designated area, but Mains walked away from the officers. Despite Trooper Albrecht's repeated orders that Mains should stop, Mains continued to walk away from the officers. Trooper Albrecht handcuffed Mains, who remained outside the house with Marshal Mann.

Trooper Albrecht entered the house and spoke with Mains' girlfriend, Miranda Teeters. Teeters was crying, and Trooper Albrecht observed red marks on her neck. Teeters reported that, during an argument, Mains stood behind Teeters and applied pressure to her throat with his forearm, causing Teeters to suffer

pain and extremely restricted breathing. Teeters also advised that she was pregnant and that she had just informed Mains of the pregnancy.[1]

[5] A search of Mains' person pursuant to his arrest revealed four Clonazepam pills, a Schedule IV controlled substance; a cut straw with a white powder residue; and three baggies of a crystalline substance, later identified as methamphetamine. Mains was placed in a police vehicle, where he shouted and kicked the cage and ignored multiple orders to stop. Mains was then transported to the jail, where he refused to exit the police vehicle. Trooper Albrecht and Marshal Mann had to pull Mains from the vehicle and, when Mains refused to walk, Mains was carried into the jail.

[6] On March 6, 2018, the State charged Mains with battery on a pregnant woman, a Level 5 felony; strangulation, a Level 6 felony; possession of methamphetamine, a Level 6 felony; possession of a legend drug, a Level 6 felony; domestic battery, a class A misdemeanor; possession of a controlled substance, a Class A misdemeanor; and resisting law enforcement, a Class A misdemeanor.

[7] On April 24, 2019, Mains and the State tendered a plea agreement to the trial court. The trial court scheduled a plea hearing for August 7, 2019; however, on

_____

[1] At the time of the incident, Teeters was three months into her pregnancy.

that date, Mains failed to appear, and the trial court issued a failure to appear warrant for Mains' arrest. On August 9, 2019, and August 13, 2019, respectively, the State charged Mains with failing to appear, a Level 6 felony, and with being a habitual offender.

[8] On November 13, 2019, Mains pleaded guilty, pursuant to a written plea agreement, to: Count I, battery resulting in injury to a pregnant woman, a Level 5 felony; Count III, possession of methamphetamine, a Level 6 felony; Count VIII, failure to appear, a Level 6 felony; and being a habitual offender. The plea agreement provided for: (1) a suspended six-year sentence on Count I; (2) a suspended two and one-half-year sentence on Count III; (3) sentencing to be left to the trial court's discretion regarding Count VIII and the habitual offender count; and (4) the sentences on all four counts to be served consecutively.

[9] On December 4, 2019, the trial court conducted Mains' sentencing hearing. The trial court identified the following aggravating factors: (1) Mains' prior criminal history, including four separate violations of probation; (2) Mains committed the instant offenses while he was on probation; (3) Mains' high likelihood to reoffend; and (4) Mains' poor character as revealed by his inaction[2] with respect to the Department of Child Services' ("DCS") case plan for his child with Teeters and his "lack of respect for authority and rules." Conf. App. Vol. II p. 138. As mitigating factors, the trial court identified: (1)

---

[2] The trial court acknowledged that "incarceration has limited [Mains'] ability to participate in services offered by DCS, however, even when Defendant was not incarcerated and was able to do so, he did not." Conf. App. Vol. II p. 138.

Mains' entry of a guilty plea and acceptance of responsibility, offset by the considerable sentencing benefit conferred upon Mains from suspended sentences on two of four counts; and (2) Mains' expression of remorse and his growth due to becoming a father, offset by Mains' inaction as to the DCS case plan.

[10] The trial court imposed the following consecutive sentences: Count I, six years, suspended to probation; Count III, two and one-half years suspended to probation; Count VIII, one and one-half years executed; and four years executed for being a habitual offender. Thus, the trial court imposed an aggregate sentence of fourteen years with five and one-half years executed, and the remainder suspended to probation. Mains now appeals.

## Analysis

[11] Mains argues that his five and one-half-year executed sentence is inappropriate in light of the nature of his offenses and his character because "[n]othing in the nature of Mains' criminal actions warranted imposition of a lengthy executed sentence[,]" and Mains has engaged in "substantial rehabilitative processes[.]" Mains' Br. pp. 10, 12. As Mains argues in his brief:

> While the conduct that Mains admitted to committing was upsetting, it did not exceed the statutory elements of the offense. Mains admitted to battering the pregnant mother of his child, however there was no evidence that the victim was permanently injured or that Mains had any intention of injuring her. Mains admitted to possession of methamphetamine. There was no evidence that he possessed an excessive quantity or had acquired the methamphetamine for anything other than personal use.

> Mains [ ] admitted to felony failure to appear. Mains did not show up for his [ ] sentencing hearing. There was no evidence that he concealed himself or otherwise attempted to avoid the jurisdiction of the trial court.

*Id.* at 12.

[12] Indiana Appellate Rule 7(B) provides that this Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant must persuade us that his or her sentence is inappropriate. *Wilson v. State*, 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[13] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; and the trial court's judgment receives "considerable deference." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Sanders*, 71 N.E.3d at 844 (citing *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[14] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. As to Mains' Level 5 felony conviction, the sentencing range for a Level 5 felony is between one and six

years, with an advisory sentence of three years. *See* Ind. Code § 35-50-2-6. Here, as required by the plea agreement, the trial court imposed a maximum, six-year suspended sentence. Regarding Mains' two Level 6 felony convictions, the sentencing range for a Level 6 felony is between six months and two and one-half years, with an advisory sentence of one year. *See* I.C. § 35-50-2-7. The trial court here imposed a maximum, two and one-half-year suspended sentence as required by the plea agreement and a one and one-half year executed sentence. As to Mains' habitual offender enhancement, Indiana Code Section 35-50-2-8(i) provides: "The court shall sentence a person found to be a habitual offender to an additional fixed term that is between: . . . two (2) years and six (6) years, for a person convicted of a Level 5 or Level 6 felony." The trial court imposed a four-year habitual offender enhancement.

[15]  Pursuant to the plea agreement, Mains was sentenced to maximum, suspended sentences—totaling eight and one-half years—on two of the four counts. As to the remaining counts, regarding which sentencing was left to the trial court's discretion, Mains faced a maximum sentence of eight and one-half years executed; however, the trial court imposed a five and one-half-year executed sentence.

[16]  Our analysis of the "nature of the offense" requires us to look at the extent and depravity of the offense rather than comparing the instant facts to other cases. *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002). The nature of Mains' various offenses is as follows. On the day that Mains learned Teeter was pregnant with his child, Mains stood behind Teeter, wrapped his forearm

around Teeter's throat, and squeezed until Teeter could not breathe. Teeter suffered pain and developed red markings on her neck as a result. When the police responded, Mains walked away; ignored direct commands; shouted and kicked; and possessed three baggies of methamphetamine. At the jail, Mains refused to leave the police vehicle, which required the officers to pull him from the police vehicle and carry him into the jail. Subsequently, the State offered, and Mains accepted, a favorable plea agreement; however, Mains failed to appear for his plea hearing. The trial court had to issue an arrest warrant to secure Main's presence in court for sentencing.

[17] Although Mains contends that the facts show nothing more than the basic elements of his various offense, we cannot agree, particularly as to Mains' conviction for battery against a pregnant woman, a Level 5 felony, for which Mains received a suspended sentence. Indiana Code Section 35-42-2-1(g)(3) provides that "a person who knowingly or intentionally: . . . touches another person in a rude, insolent, or angry manner" "result[ing] in bodily injury to a pregnant woman if the person knew of the pregnancy[,]" commits battery on a pregnant woman, a Level 5 felony. In the State's probable cause affidavit, Trooper Albrecht averred that, after Teeter described the way Mains choked her, Trooper Albrecht asked: "if it was like a rear naked choke, and [Teeter] advised yes." Conf. App. Vol. II p. 33; *see also* Conf. Tr. Vol. II p. 36 (State's factual basis). "The rear naked choke is a submission hold used in mixed martial arts [combat] that cuts off the flow of blood to the brain. If applied correctly, it will force the opponent to submit. If they do not submit, they will

pass out within a matter of seconds." https://www.mma-training.com/rear-naked-choke/ (last visited June 5, 2020). "The technique involves wrapping one arm around the opponent['s] neck so that the inside of your elbow is placed against his throat[.]" *Id.* The record, thus, reveals that Mains committed an act of uncommon viciousness against Teeter. Mains' claim fails.

[18] Review of the character of an offender requires us to consider the defendant's background, criminal history, age, and remorse. *See James v.* State, 868 N.E.2d 543, 548-49 (Ind. Ct. App. 2007). "The significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State,* 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State,* 13 N.E.3d 440, 448 (Ind. Ct. App. 2014).

[19] Although Mains has no juvenile criminal record, Mains—who was twenty-four years old at the time of sentencing—has amassed a significant criminal history since his first criminal conviction at eighteen years of age. According to the presentence investigation report ("PSI"), Mains has prior convictions for possession of a Schedule I, II, III, or IV controlled substance, a class D felony (2014); obtaining a controlled substance by fraud or deceit, class D felonies (2014, 2015); visiting a common nuisance, a Class B misdemeanor (2015); possession of marijuana, a Class B misdemeanor (2016); invasion of privacy by violating a protective order issued to prevent domestic violence, a Class A misdemeanor (2018); and invasion of privacy and perjury, as Level 6 felonies

(2019). Mains' 2019 convictions for invasion of privacy and perjury pertain to his violation of the trial court's no-contact order regarding Teeter and Mains' false in-court testimony that he had not contacted Teeter. Also, Mains has been granted probation on five occasions and has violated the terms of probation five times; Mains was on probation at the time of the instant offenses. It reflects poorly on Mains' character that he remains undeterred from criminality, despite multiple contacts with the justice system and extensions of grace by the courts.

[20] Further, Mains readily admits to having a longstanding substance abuse problem; however, Mains also concedes that he has failed to take full advantage of multiple court-ordered drug programs. *See* Mains' Br. p. 13. The escalation of Mains' crimes from drug activity to an act of extreme violence also reflects poorly on his character. Lastly, we are unpersuaded by Mains' claim that "the birth of his child has . . . made him realize the need to make a change in his life for the better[,]" given that Mains did not visit or adhere to DCS's case plan for the child when Mains could do so. *See* Mains' Br. p. 13. Mains' sentence is not inappropriate in light of the nature of his offenses and his character.

## Conclusion

[21] Mains' sentence is not inappropriate. We affirm.

[22] Affirmed.

Riley, J., and Mathias, J., concur.