## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2020, 6:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stephon Moore,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 24, 2020

Court of Appeals Case No.
19A-CR-2573

Appeal from the Jennings Circuit Court

The Honorable Jon W. Webster, Judge

Trial Court Cause No.
40C01-1904-MR-1

**Tavitas, Judge.**

# Case Summary

[1] Stephon Moore appeals his convictions and ninety-five-year sentence for murder and attempted murder, a Level 1 felony. We affirm.

# Issues

[2] Moore raises two issues on appeal, which we restate as follows:

> I. Whether the State presented sufficient evidence to rebut Moore's claim of self-defense.
>
> II. Whether Moore's sentence is inappropriate in light of the nature of his offenses and his character.

# Facts

[3] On the afternoon of April 15, 2019, Frank Bailey ("Frank") went to the North Vernon residence shared by Kinya Sparks and her nephew, Larry Evans ("Larry"). The residence was equipped with four surveillance cameras and a digital video recorder. Taylor Wade was present during Frank's visit. Also present were Leslie McGuire; Taylor Bryson; Donavan Booker; and Larry's father, Richard Evans ("Richard"),[1] who was repairing a truck on the premises.

[4] Wade confronted Frank for allegedly touching Wade's girlfriend inappropriately when Wade was incarcerated. Wade punched Frank several

---

[1] Richard is Sparks' brother-in-law.

times; and Wade and Larry "chased Frank down the road." Tr. Vol. III p. 100. Frank "said he was coming back." *Id*. at 101.

[5] At the time, Moore[2] and Fashion Ellis were visiting Frank's mother, Junara Bailey, in Madison. Moore was dating Junara, who sometimes lived with her daughter, Breaunna McAuliff ("Breaunna"). Breaunna is Frank's sister. Moore and Breaunna's husband were friends. Moore and Ellis hail from Louisville, Kentucky. The area code for Louisville is 502. *Id*. at 17.

[6] Frank's sisters, Destiny Bailey ("Destiny") and Breaunna, learned that Frank was "jumped" and denied a "fair fight[.]" *Id*. at 141, 168. Breaunna and/or her husband sent threatening messages to Larry via Facebook Messenger. Also, Destiny sent Larry a message stating that "5-0-2 boys are coming." *Id*. Destiny arranged to drive from Madison to North Vernon, pick Frank up, and take Frank to Larry's house for a "fair fight." *Id*. at 168.

[7] Later that same evening, Destiny drove Frank, Moore, and Ellis to Larry's house in Moore's silver Chrysler 200. Frank reportedly asked Moore and Ellis to come to ensure the fight was fair and that Frank did not get "jumped." *Id*. at 170. En route, Moore, who was armed with a handgun, asked whether anyone at Larry's house had firearms. Frank responded that there were only mechanics' tools at Larry's house.

---

[2] Certain witnesses identify Moore by his nickname, "Friendly," in the record. *See* Tr. Vol. III pp. 140, 162.

[8]     Shortly before 7:00 P.M., Richard left Larry's house to get a fuel line tool. Around that time, Destiny, Frank, Moore, and Ellis arrived at Larry's house. Larry, Donavan, and Bryson came outside. Wade was not there, but Larry still agreed to fight. Before the fight, Moore "pulled a gun . . . [and] said 'what's up, what's up then.'" *Id.* at 103. Larry and Frank began to fight. Around that time, Richard returned to the scene with the fuel line tool and saw Larry and Frank fighting; Richard stood beside his vehicle and watched the fight. The commotion woke Sparks, who came outside and stood next to Destiny.

[9]     At one point, Larry was dominating the fight and was "on top of" Frank. *Id.* at 106. Moore intervened by kicking Larry off Frank. Seeing this, Donavan began to argue with Ellis and Moore. Ellis either lunged at or swung to strike Donavan. Donavan was holding a breaker bar and used the breaker bar to block Ellis' blow. Donavan lost his footing and staggered backwards. Donavan then regained his footing, approached Ellis, and assumed a defensive stance. Moore approached Donavan, pulled the handgun, and chambered a round. Donavan saw the gun and turned to flee. Donavan took a few steps away from Moore, when Moore shot Donavan in the back.

[10]    Larry was standing approximately five feet from Donavan when Moore shot Donavan. Larry turned and ran toward the residence. Moore shot at Larry, and a bullet hit the ground behind Larry. Moore then turned to shoot at Richard, but Moore's gun jammed. The video surveillance system at the residence captured the incident.

After the shooting, Destiny drove Moore, Ellis, and Frank from the scene. Moore, Ellis, and Frank fled to Louisville, where they were arrested the following day. On April 16, 2019, the State charged Moore with murder; and two counts of attempted murder, Level 1 felonies, regarding Larry and Richard. The State subsequently amended the charging information to add a count of theft of a firearm, a Level 6 felony.[3] The trial court conducted a five-day jury trial that commenced on September 23, 2019. Sparks, Larry, and Richard testified that Moore did not face any threat of harm from Donavan when Moore shot Donavan.

[11]   At the close of the trial, the trial court read an instruction on self-defense to the jury. After deliberations, the jury convicted Moore of murder and the attempted murder of Larry Evans; and the jury found Moore not guilty of the attempted murder of Richard Evans and theft of a firearm.

[12]   At Moore's sentencing hearing on October 29, 2019, the trial court identified the following aggravating factors: (1) Moore has not obtained his high school diploma or GED; (2) Moore committed the instant offenses with a stolen handgun and did not have a handgun permit or license to carry a handgun; (3) Moore "had a long time to consider and reflect upon entering into a dispute with a loaded handgun before doing so"; (4) Moore's nine prior misdemeanor convictions; (5) Moore committed the instant offenses while he was on

---

[3] The State's second amended charging information, filed on May 13, 2019, is the operative charging document.

probation; (6) the emotional impact on Donavan Booker's family; and (7) the emotional impact on Larry Evans. Conf. App. Vol. III p. 60. As mitigating circumstances, the trial court identified: (1) the impact of Moore's incarceration on his four children; (2) Moore's learning disability; and (3) Moore's prior attempts at substance abuse rehabilitation.

[13] The trial court imposed consecutive sentences as follows: for murder, sixty years executed in the Department of Correction ("DOC"); and for attempted murder, thirty-five years executed.[4] Moore now appeals.

## Analysis

### I. Self-Defense

[14] Moore argues that the State failed to present sufficient evidence to rebut his self-defense claim. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). When analyzing a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the judgment. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). "It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a

---

[4] In addition to court costs and a public defender fee, the trial court ordered Moore to make restitution for Donavan Booker's funeral expenses.

conviction." *Id*. The evidence does not have to overcome every reasonable hypothesis of innocence, and it is sufficient if an inference may reasonably be drawn to support the conviction. *Id*.

[15] A valid claim of self-defense is legal justification for an otherwise criminal act. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Indiana Code Section 35-41-3-2(c) provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> > (1) is justified in using deadly force; and
> >
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

[16] To prevail on a self-defense claim, the defendant must show that he: (1) was in a place where he had a right to be; (2) acted without fault; and (3) was in reasonable fear or apprehension of bodily harm. *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Wilson*, 770 N.E.2d at 800. "The State may meet this

burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). "If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson*, 770 N.E.2d at 800-01.

[17] "The amount of force that an individual may use to protect himself must be proportionate to the urgency of the situation" facing the individual. *Pinkston v. State*, 821 N.E.2d 830, 842 (Ind. Ct. App. 2004), *trans. denied*. "When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished." *Id*.

[18] Moore maintains that the State did not "disprove any one of the elements of self-defense." Moore's Br. p. 17. We cannot agree. The record reveals that the State presented eyewitness testimony from Sparks, Richard, and Larry, which was corroborated by video surveillance evidence, that Moore: (1) went, armed, to the scene of the planned fistfight; (2) brandished his gun before the fight began; (3) entered the fight by kicking Larry off Frank; (4) brandished his gun a second time when Donavan defended himself from Ellis; (5) shot Donavan after Donavan saw the gun and turned to flee; and (6) shot at Larry's back as Larry ran toward the residence. Three eyewitnesses testified that Moore faced no threat of bodily harm when he shot Donavan and when he shot at Larry. The State, thus, negated two elements of Moore's self-defense claim—namely,

that Moore acted without fault; and that Moore acted in reasonable fear or apprehension of bodily harm.

[19] The evidence in the record is, thus, sufficient to rebut Moore's claim of self-defense and, consequently, to support Moore's conviction. Moore's argument is no more than an invitation to reweigh the surveillance video evidence and the eyewitnesses' credibility, which we cannot do. *See Sallee*, 51 N.E.3d at 133.

## *II. Inappropriateness of Sentence*

[20] Moore also argues that his ninety-five-year aggregate sentence is inappropriate in light of the nature of his offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant must persuade us that his or her sentence is inappropriate. *Wilson v. State*, 966 N.E.2d 1259, 1266 (Ind. Ct. App. 2012) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *trans. denied*.

[21] In Indiana, trial courts can tailor an appropriate sentence to the circumstances presented; and the trial court's judgment receives "considerable deference." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. 2017) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). In conducting our review, we do not look to see whether the defendant's sentence is appropriate or "if another sentence might be more appropriate; rather, the question is whether the sentence

imposed is inappropriate." *Sanders*, 71 N.E.3d at 844 (citing *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)).

[22] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Regarding Moore's murder conviction, the sentencing range for murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years. *See* Ind. Code § 35-50-2-3. Here, the trial court imposed a sixty-year executed sentence for Donavan's murder. In regards to Moore's attempted murder conviction, the sentencing range for a Level 1 felony is between twenty and forty years, with the advisory sentence being thirty years. I.C. § 35-50-2-4(b). The trial court sentenced Moore to thirty-five years, executed for the attempted murder of Larry. Notably, the trial court did not impose a maximum sentence on either count; and, although Moore faced a potential sentence of 105 years, the trial court imposed a ninety-five-year term.

[23] Our analysis of the "nature of the offense" requires us to look at the extent and depravity of the offense rather than comparing the instant facts to other cases. *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002). The nature of Moore's offenses is as follows: Moore literally took a gun to what was to be a "fair" fistfight and brandished the gun before the fight began. During a physical altercation that Ellis initiated with Donavan, Moore interjected himself by kicking Larry and by brandishing his gun a second time. Although Donavan

saw the gun, turned to flee, and began to drop the breaker bar, Moore fired the gun and shot Donavan in the back. Moore also shot at Larry as Larry fled.

[24] Our review of the character of an offender requires us to consider the defendant's background, criminal history, age, and remorse. *See James v.* State, 868 N.E.2d 543, 548-49 (Ind. Ct. App. 2007). "The significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State,* 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State,* 13 N.E.3d 440, 448 (Ind. Ct. App. 2014).

[25] Moore was thirty-one years old at the time of his sentencing hearing. Moore's adult[5] criminal history includes convictions for the following misdemeanor offenses: possession of marijuana (2010); possession of a controlled substance (2010); carrying a concealed deadly weapon (2015); harassment by physical contact without injury (2017, 2019); possession of methamphetamine (2019); possession of marijuana (2019, twice); and possession of drug paraphernalia (2019).[6] Moore is rated in "HIGH risk category to reoffend" on the Indiana

---

[5] Moore has no juvenile criminal history.

[6] The pre-sentence investigation reports provides that, at the time of Moore's sentencing for the instant offenses, he was subject to a Clark County arrest warrant regarding pending charges of residential breaking and entering, a Level 6 felony; interference with the reporting of a crime, a Class A misdemeanor; and criminal mischief, a Class B misdemeanor. The Clark County offenses were allegedly committed thirteen days before the instant offenses on April 2, 2019.

Risk Assessment System ("IRAS") scale. Conf. App. Vol. III p. 20. Moore's criminal history reflects poorly on his character.

[26] Given his history of run-ins with the justice system, it is troubling that Moore admits that he "is more likely to engage in risky behavior when he is with other people . . . ." *Id.* This mob mentality figured significantly in Donavan's death and Larry's attempted murder, which occurred because Moore allowed himself to be drawn into Frank's dispute with people whom Moore did not know and then resorted to deadly violence. Lastly, we note Moore's significant history of substance abuse. Moore "began drinking and using pills at the age of fifteen" and "began smoking pot at the age of sixteen and progressed to cocaine and ecstasy in his twenties[.]" *Id.* Despite Moore's past completion of two drug rehabilitation programs, Moore admits that he "used ecstasy, [P]ercocet[ ], and marijuana on the day of the present offense[s]." *Id.* at 19.

[27] Based on the foregoing, nothing about the nature of Moore's offenses or his character persuades us that his aggravated sentence is inappropriate.

## Conclusion

[28] The State presented sufficient evidence to rebut Moore's claim of self-defense. Moore's sentence is not inappropriate in light of the nature of his offenses and his character. We affirm.

[29] Affirmed.

Riley, J., and Mathias, J., concur.